IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| TIVO INC., | ) | Civil Action No. 2:09-CV-259-DF |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| AT&T INC., | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MICROSOFT CORPORATION, | ) | |
| | ) | |
| Intervenor. | ) | |
| —————————————————— | ) | |

## PLAINTIFF TIVO INC.'S MOTION TO DISMISS THE MEDIAROOM AND UNIDENTIFIED CUSTOMER CLAIMS FROM MICROSOFT'S COMPLAINT IN INTERVENTION

2220886

PLAINTIFF TIVO INC.'S MOTION TO DISMISS THE
MEDIAROOM AND UNIDENTIFIED CUSTOMER CLAIMS
FROM MICROSOFT'S COMPLAINT IN INTERVENTION

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................... 1

II.   ARGUMENT ................................................................................................. 2

A.    Microsoft Bears The Burden Of Establishing That A Real and
Definite Controversy Exists Under Article III And The Declaratory
Judgment Act. ...................................................................................... 2

B.    Microsoft's Complaint Does Not Even Attempt To Allege The
Jurisdictional Facts Necessary To Support The Offending Claims. ....................... 3

C.    Microsoft's Failure to Specifically Plead Any Adequate
Jurisdictional Facts Requires Dismissal .................................................. 5

D.    TiVo's Claims Against AT&T U-verse Do Not Provide Jurisdiction
For Microsoft's Mediaroom or Unidentified Customer Claims. ............................ 6

E.    Court's Have Repeatedly Rejected Microsoft's Attempts To
Interpose Itself Between Patentee's And The Direct Infringers That
Use Microsoft's Software. ...................................................................... 9

F.    Microsoft's Claims Do Not Allege Any Real or Definite
Controversy ....................................................................................... 10

G.    The Court Has Broad Discretion to Dismiss Microsoft's Mediaroom
and Unidentified Customer Claims .......................................................... 13

III.  CONCLUSION ............................................................................................ 15

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbot Labs. v. Gardner*,
 387 U.S. 136 (1967), *overruled in part on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977)...............................................................................13

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
 300 U.S. 227 (1937).................................................................................3, 10

*Arris Group, Inc. British Telecommunications PLC*,
 No. 1:09-CV-671, 2010 WL 908932 (N.D. Ga. Feb. 18, 2010)..........................7

*Ashcroft v. Iqbal*,
 __ U.S. __, 129 S.Ct. 1937 (2009)........................................................................5

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................................................................5

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
 495 F.3d 1340 (Fed. Cir. 2007)..................................................................3, 8, 9

*Cat Tech LLC v. TubeMaster, Inc.*,
 528 F.3d 871 (Fed. Cir. 2008).................................................................11, 12

*Dow Chem. Co. v. Viskase*,
 892 F. Supp. 991 (N.D. Ill. 1995)........................................................................7

*EMC Corp. v. Norand Corp.*,
 89 F.3d 807 (Fed Cir. 1996)..........................................................................13, 14

*Fujitsu v. Nanya Technology Corp.*,
 No. C 06-6613, 2008 WL 3539503 (N.D. Cal. Aug. 12, 2008).....................6, 7

*Joy Techs., Inc. v. Flakt, Inc.*,
 6 F.3d 770 (Fed. Cir. 1993) ...............................................................................15

*Laird v. Tatum*,
 408 U.S. 1 (1972)..................................................................................................13

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)..............................................................................................11

*Marathon Oil Co. v. Ruhrgas, A.G.*,
 115 F.3d 315 (5th Cir. 1997) ...........................................................................3

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*,
 312 U.S. 270 (1941).................................................................................................3

*Medlmmune, Inc. v. Genentech, Inc.*,
 549 U.S. 118 (2007).................................................................................... passim

Page(s)

*Microchip Tech., Inc. v. The Chamberlain Group, Inc.*,
    441 F.3d 936 (Fed. Cir. 2006)...............................................................................8

*Microsoft Corp. v. TiVo Inc.*,
    No. 5:10-CV-240 (N.D. Cal.) ................................................................................14

*Microsoft Corp. v. WebXchange Inc.*,
    606 F.Supp.2d 1087 (N.D. Cal. 2009) ...................................................................9

*Microsoft Corp. v. WebXchange Inc.*,
    No. 09-484-JJF, 2009 WL 3534845 (D. Del. Oct. 30, 2009) ...................9, 10, 12

*Ours Technology, Inc. v. Data Drive Thru, Inc.*,
    645 F. Supp. 2d 830 (N.D. Cal. 2009) ...............................................................8, 9

*Panavise Products, Inc. v. National Products, Inc.*,
    306 Fed. Appx. 570 (Fed. Cir. 2009)....................................................................7

*Prasco, LLC v. Medicis Pharmaceutical Corp.*,
    537 F.3d 1329 (Fed. Cir. 2008)................................................................... passim

*Quanta Computer, Inc. v. LG Electronics, Inc.*,
    553 U.S. 617 (2008)..............................................................................................14

*SanDisk Corp. v. STMicroelectronics, Inc.*,
    480 F.3d 1372 (Fed. Cir. 2007).............................................................................11

*Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*,
    363 F.3d 1361 (Fed. Cir. 2004).......................................................................11, 12

*Viking Injector v. Chemtron*,
    No. 3:CV-93-0791, 1993 WL 625543 (M.D. Penn. Nov. 9, 1993) ....................7

*Vivid Techs., Inc. v. Am. Science & Eng'g Inc.*,
    200 F.3d 795 (Fed Cir. 1999)...............................................................................14

*Warth v. Seldin*,
    422 U.S. 490 (1975)........................................................................................11, 14

*Wilton v. Seven Falls, Co.*,
    515 U.S. 277 (1995)..............................................................................................13

**Statutes**

28 U.S.C. § 2201(a) .....................................................................................................2

U.S. Const. art. III, § 2 ................................................................................................2

**Other Authorities**

FED. R. CIV. P. 12(e) ...................................................................................................11

Page(s)

FED. R. CIV. P. 12(h)(3)..................................................................................................................3

**Treatises**

FED. PRAC. & PROC. § 2759 .........................................................................................................13

Plaintiff TiVo Inc. ("TiVo") hereby moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss every declaratory judgment claim in Microsoft Corporation's Complaint in Intervention ("Microsoft's Complaint") except those that specifically relate to the accused AT&T U-verse products and services.  Beyond the claims relating to AT&T, Microsoft's Complaint is not based on any legally cognizable dispute between the parties.  Microsoft has not alleged any facts sufficient to confer declaratory judgment jurisdiction over claims regarding Microsoft's Mediaroom software or its claims regarding the unidentified potential customers for that software.

## I.   INTRODUCTION

TiVo, a pioneer in home entertainment, created the first commercially viable digital video recorder ("DVR") and owns patents to protect its innovative ideas that revolutionize the way that consumers access home entertainment.  TiVo filed its Complaint on August 26, 2009 seeking, in relevant part, to put a halt to AT&T's infringement of certain TiVo patents through AT&T U-verse, which provides DVR products and services to AT&T's customers.[1]  Nearly four months later, Microsoft moved to intervene, alleging that its Mediaroom software is one component in the U-verse DVRs and that AT&T had demanded indemnification from Microsoft.  Microsoft's motion explained that it "seeks to intervene to establish that (a) AT&T Inc. does not infringe the asserted patents by virtue of the fact that AT&T Inc.'s subsidiaries include Mediaroom software in U-verse products and services and (b) the patents are invalid and unenforceable."  (D.I. 22, p. 11).

But Microsoft's Complaint stretches well beyond any actual controversy involving TiVo and AT&T U-verse and pursues a wholly improper and non-justiciable purpose—to interpose Microsoft between TiVo and Microsoft's other, unidentified "potential" customers who might use Mediaroom in some unspecified manner as one component in some unnamed products.  Microsoft's apparent goal is to block TiVo's ability to enforce its patents and collect damages against presently unknown direct infringers should such infringement disputes ever arise.

---

[1] The "TiVo patents" referred to throughout this brief are the three identified in both TiVo's Complaint and Microsoft's Complaint in Intervention—U.S. Patent No. 6,233,389, U.S. Patent No. 7,529,465, and  U.S. Patent No. 7,493,015.

- 1 -

Microsoft's Complaint includes three types of declaratory judgment claims:  (1) claims involving AT&T's use of Microsoft's Mediaroom software in AT&T's U-verse set top boxes (the "**U-verse Claims**"), (2) claims involving Microsoft's separate activities in connection with Mediaroom (the "**Mediaroom Claims**"),[2] and (3) claims involving unknown and unidentified Microsoft customers and their unspecified products and activities in connection with Mediaroom (the "**Unidentified Customer Claims**")[3] (as well as invalidity claims that arise from the latter two categories).  But TiVo's complaint in this matter does not mention Microsoft or Mediaroom, Microsoft has refused for months to provide any Microsoft source code to TiVo, and TiVo has never accused Microsoft or any of Microsoft's other customers of infringement through any activities in connection with Mediaroom.  Microsoft's Complaint does not allege otherwise. Moreover, Microsoft's Complaint does not allege any facts that would establish any definite, concrete, and real dispute between TiVo and Microsoft regarding the TiVo patents.  As such, Microsoft has failed to establish an Article III actual case or controversy and the Mediaroom and Unidentified Customer Claims must be dismissed.

## II.  ARGUMENT

### A.   Microsoft Bears The Burden Of Establishing That A Real and Definite Controversy Exists Under Article III And The Declaratory Judgment Act.

Microsoft's declaratory judgment claims face a strong presumption that they are not justiciable.  "The Declaratory Judgment Act is not an independent basis for subject matter jurisdiction. Rather, it provides a remedy available only if the court has jurisdiction from some other source."  *Prasco, LLC v. Medicis Pharmaceutical Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008) (citations omitted).  "Such jurisdiction is limited by Article III of the Constitution, which restricts federal judicial power to the adjudication of 'Cases' or 'Controversies.'"  *Id.* (quoting U.S. Const. art. III, § 2).  Thus, in accordance with Article III, the Declaratory Judgment Act requires that an "actual controversy" must exist before a court "may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).

---

[2] *See, e.g.,* D.I. 23 ¶¶ 13, 16, 19, 20, 23, portions of 26, 29, 33, portions of 36, 39. and 40.

[3] *See, e.g.,* D.I. 23 ¶¶ 14, 16, 19, 20, 24, portions of 26, 29, 34, portions of 36, 39. and 40.

There is no bright-line rule for determining whether an action satisfies the case or controversy requirement. *Prasco*, 537 F.3d at 1336. Instead, the fundamental inquiry in deciding declaratory judgment jurisdiction is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Medlmmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). To survive the "case-or-controversy" requirement, the dispute alleged in a complaint must be "definite and concrete, touching the legal relations of parties having adverse legal interests" and it must be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127 (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41 (1937)).[4]

There is a strong presumption against federal jurisdiction. *Marathon Oil v. Ruhrgas, A.G.*, 115 F.3d 315, 318 (5th Cir. 1997). "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec Australia, Ltd. v. Nucleonics*, 495 F.3d 1340, 1344 (Fed. Cir. 2007). Thus, Microsoft has a "threshold burden of proving an immediate and real controversy" to maintain a declaratory action and this controversy must have existed when its complaint was filed. *Prasco*, 537 F.3d at 1339. "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

**B.    Microsoft's Complaint Does Not Even Attempt To Allege The Jurisdictional Facts Necessary To Support The Offending Claims.**

Microsoft's Complaint fails on its face to allege jurisdictional facts for the Mediaroom and Unidentified Customer Claims. The single paragraph in Microsoft's Complaint that attempts to

---

[4] Prior to *MedImmune*, the Federal Circuit required that a declaratory judgment plaintiff show that a patentee's conduct created a "reasonable apprehension" of suit against the plaintiff. In *MedImmune*, the Supreme Court rejected the reasonable apprehension of suit inquiry as the sole test for jurisdiction, but the inquiry remains relevant in assessing all the circumstances to determine whether a justiciable Article III controversy is present. *Prasco*, 537 F.3d at 1336.

provide factual allegations of "[a]n actual and justiciable controversy" limits its allegations

regarding any infringement dispute to only the AT&T U-verse Claims:

> 11.    An actual and justiciable controversy exists between Microsoft and
> Plaintiff **as to whether or not AT&T Inc. has infringed** any claim of the Asserted
> Patents, directly or indirectly, in connection with Mediaroom.  Further, an actual
> and justiciable controversy exists between Microsoft and Plaintiff as to whether or
> not the claims of the Asserted Patents are invalid.

(D.I. 23, p. 3 ¶ 11) (emphasis added).  Each other factual background paragraph in Microsoft's

Complaint (save one that addresses TiVo's patent ownership) is also limited to allegations

regarding AT&T U-verse.  (D.I. 23, pp. 2-3 ¶¶ 6, 8-10).

Not anywhere else in the Complaint is there a single allegation of fact to support any actual

case or controversy between TiVo and either Microsoft or the unidentified customers.  Microsoft

has not made any showing that a finding of infringement on AT&T's part would necessarily imply

that Microsoft directly infringed, or that Microsoft induced or contributed to the infringement of

any customer.  Microsoft's Complaint does not even allege any facts that support an actual

controversy regarding whether Mediaroom alone directly infringes, whether Mediaroom lacks

substantial non-infringing uses such that it may contributorily infringe, or whether Microsoft

induced any customers to infringe.  Further, Microsoft has not alleged or proffered any evidence

that it instructed, caused, or encouraged any customers how to make and use complete products

with all the components and steps required to induce the direct infringement of TiVo's patents.

Nor has it alleged or proffered any evidence that Mediaroom can not be used without infringing.

Microsoft's complaint must therefore be dismissed because it does not contain any

allegations that TiVo believes or plans to assert that Mediaroom, or the unspecified products of the

unidentified customers, infringe the TiVo patents or that TiVo's claims against AT&T U-verse

would necessarily compel that result.  The lack of such allegations "creates a high barrier to

proving that [Microsoft] faces an imminent risk of injury." *Prasco*, 537 F.3d at 1340.  Microsoft's

inability to muster sufficient factual allegations to establish jurisdiction is unsurprising since such

facts do not exist.  TiVo has never accused Microsoft of infringing the TiVo patents at issue.

2220886

- 4 -

PLAINTIFF TIVO INC.'S MOTION TO DISMISS THE
MEDIAROOM AND UNIDENTIFIED CUSTOMER CLAIMS
FROM MICROSOFT'S COMPLAINT IN INTERVENTION

**C.     Microsoft's Failure to Specifically Plead Any Adequate Jurisdictional Facts Requires Dismissal.**

Microsoft's decision to remain deliberately vague—about its alleged role in infringing TiVo's patents, about its relationship with the unidentified customers, and about any facts that might show that Microsoft has engaged in potentially infringing activity such that TiVo could have brought a legal action against Microsoft—is fatal to its claims.  The few conclusory and perfunctory jurisdictional allegations that exist in Microsoft's Complaint fail to meet the pleading standards set forth by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)), and reinforced in *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937 (2009)).  While the federal pleading standards do not require "detailed factual allegations," "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. . . . Nor does a complaint suffice if it tenders 'naked assertion[s]'devoid of 'further factual enhancement.'"  *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly* at 550 U.S. at 555, 557).

Thus, when presented with a motion to dismiss, district courts should conduct a two-part analysis.  First, although factual allegations are accepted as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 1950 (citing *Twombly*, 550 U.S. at 555).  Accordingly, courts must begin "by identifying the allegations [of law] in the complaint that are not entitled to the assumption of truth."  *Id.* at 1951.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 1949.

Second, to survive a motion to dismiss, a complaint also must state a "plausible claim for relief."  *Id.* at 1950 (citing *Twombly*, 550 U.S. at 556).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).  Under the Supreme Court's precedent, Microsoft's conclusory allegations that "an actual and justiciable controversy exists" between it and TiVo are not entitled to the assumption of truth and should be ignored for the purpose of deciding the motion to dismiss.  (D.I. 23, p. 3 ¶ 11).  But even taking the threadbare factual allegations of the complaint as true, there simply is no direct dispute between TiVo and Microsoft or the unidentified customers. The complaint does not allege that

TiVo has in any way accused or threatened to sue Microsoft or the unidentified customers for infringing the TiVo patents. Neither does the complaint allege that TiVo has asserted rights under its patent based on certain identified ongoing or planned activity of Microsoft or the unidentified customers (separate from AT&T U-verse), or that Microsoft or the unidentified customers contend that they have the right to engage in any identified activity without license.

Microsoft's generalized implications—that its Mediaroom software might be used by some unidentified customers in some unspecified way as a part of some presently unknown larger system that might then potentially give rise to a potential dispute with TiVo should TiVo ever determine both that infringement exists and that it is unable to come to terms on a license with each such unidentified customer—do not suffice to create an actual controversy between Microsoft and TiVo sufficient to establish declaratory judgment jurisdiction. Article III jurisdiction cannot attach based on hypothetical parties and products. *See MedImmune*, 549 U.S. 118 at 127 (The dispute between the parties must be "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.").

> **D.     TiVo's Claims Against AT&T U-verse Do Not Provide Jurisdiction For Microsoft's Mediaroom or Unidentified Customer Claims.**

TiVo's claims against AT&T U-verse are specific to AT&T and do not create an actual case or controversy between TiVo and any of AT&T's component suppliers (such as Microsoft), or the other customers of those suppliers. (D.I. 1 (TiVo Complaint) ¶¶ 9, 18, 27 (alleging infringement by AT&T U-verse)). A patentee's suit or threat of suit against a supplier's customers is potentially sufficient to create an actual case or controversy between the supplier and the patentee only when the "defendant asserted infringement claims against the plaintiff's customers based on facts which, if the customer's infringement were proven, would compel the conclusion that the plaintiff itself had also infringed." *Fujitsu v. Nanya Technology Corp.*, No. C 06-6613, 2008 WL 3539503 at *3 (N.D. Cal. Aug. 12, 2008). In such cases, "the customer is merely a conduit for the manufacturer, thus suit against the customer reasonably implies potential suit against the manufacturer." *Viking Injector v. Chemtron*, No. 3:CV-93-0791, 1993 WL

625543, at *3 (M.D. Penn. Nov. 9, 1993).  By contrast, where there is no allegation that the component part directly infringes and hence "customers have purchased arguably non-infringing component parts from [the supplier] and produced an allegedly infringing end product," there is no controversy between the patentee and the supplier, and no jurisdiction.  *Id.* at *3; *see also Dow Chem. Co. v. Viskase*, 892 F. Supp. 991, 995 (N.D. Ill. 1995) (distinguishing the "conduit" cases).

Although the specific facts in each case must be considered in deciding whether a declaratory action is warranted, the facts here are remarkably similar to those in other cases where courts found a lack of jurisdiction.  *See, e.g., Arris Group, Inc. British Telecommunications PLC*, No. 1:09-CV-671, 2010 WL 908932 (N.D. Ga. Feb. 18, 2010); *Fujitsu*, 2008 WL 3539503.  In both *Arris* and *Fujitsu*, a supplier sold its component to a customer and the customer in turn used that component as part of an overall method or apparatus that was alleged to infringe a patent.  But the patentee never accused the supplier of infringing that patent.  In both cases, the supplier based its argument in support of the court's jurisdiction on the patentee's infringement assertions directed towards the customer, rather than the supplier itself, and on the supplier's alleged indemnity obligations toward the customer.  In both cases, the courts rejected the suppliers' arguments and dismissed the declaratory judgment claims because no controversy existed between the patentee and the supplier.  As the court in *Fujitsu* explained,

> [T]he fact that [the customer] might infringe the patent by using the [component] in a particular way does not necessarily imply that [the supplier's] sale of the [component] to [the customer] likewise infringes... Thus, while there is a controversy between [the patentee] and [the customer], there is no controversy between [the patentee] and [the supplier].

*Fujitsu*, 2008 WL 3539503 at *3.  In short, "[s]uing or threatening to sue third parties falls short of a controversy."  *Arris*, 2010 WL 908932 at *3 (citing *Panavise Products, Inc. v. National Products, Inc.*, 306 Fed. Appx. 570, 572-73 (Fed. Cir. 2009)).

The strongest statement that Microsoft has been able to muster to describe the basis for its claims came in its motion to intervene, where Microsoft stated that "[t]o the extent [TiVo's] infringement theories are directed to functionality provided by Mediaroom software, the claims in this case cast a ***potential cloud of uncertainty*** over Microsoft's relationships with other actual and

*potential* customers." (D.I. 22 p. 8) (emphasis added). Microsoft never identified any "actual" customers that might be implicated beyond AT&T. Indeed, Microsoft's own description reflects that, beyond AT&T, Microsoft's claims are based solely on an ephemeral "*potential* cloud of uncertainty" regarding "*potential* customers." Far from concrete and definite, Microsoft's claims are, by its own admission, cloudy and inchoate.

Microsoft does not allege any actual injury that it has suffered or has been threatened with. Although Microsoft concludes (without any supporting facts) that TiVo's claims against AT&T have placed "a potential cloud of uncertainty" over its potential customer relationships, that allegation merely suggests, at most, a hypothetical economic threat to sales of Mediaroom, which is not enough to create a real and immediate legal injury or threat of legal injury. *Benitec*, 495 F.3d at 1344 (" 'Without an underlying legal cause of action, any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction.' ") (*quoting Microchip Tech., Inc. v. The Chamberlain Group, Inc.*, 441 F.3d 936, 943 (Fed. Cir. 2006)).

This reasoning was applied recently in *Ours Technology, Inc. v. Data Drive Thru, Inc.*, 645 F. Supp. 2d 830 (N.D. Cal. 2009). In that case, Ours Technology, Inc. ("OTI"), the designer of a chip which enabled the automatic transfer of data files, filed an action seeking declaratory judgment of non-infringement, invalidity, and unenforceability against Data Drive Thru, Inc. ("DDT"), owner of a patent on cable devices that allow for the automatic data transfer. While DDT had not alleged that OTI infringed, it had sued four of OTI's customers whose cable devices contained an automatic file transfer feature. *Id.* at 832-33. The court held that DDT's infringement accusations against OTI's customers for selling devices that contained OTI's microchip did not establish an actual controversy between OTI and DDT. *Id.* at 839-40. In addition to finding no underlying claim for direct or indirect infringement, the court rejected OTI's argument that an actual controversy existed because OTI indemnified the four customers accused of infringement by DDT because OTI did not provide any document "evidencing a legal basis for

the [customers] to have been indemnified by OTI." *Id.* at 839.[5]  OTI's presumed interest to

preserve its customer base was "largely--if not exclusively—economic" and did not establish "a

substantial controversy, between parties having adverse legal interests, of sufficient immediacy

and reality to warrant the issuance of a declaratory judgment." *Id.* at 840.

> **E.     Court's Have Repeatedly Rejected Microsoft's Attempts To Interpose Itself**
> **Between Patentee's And The Direct Infringers That Use Microsoft's Software.**

This is not the first time that Microsoft has wrongfully attempted to interject itself between

a patent owner and all of the potential customers that might ever use Microsoft's software to create

directly infringing products.  At least two other courts have soundly rejected this now routine

Microsoft tactic.  *See, e.g., Microsoft Corp. v. WebXchange Inc.*, 606 F.Supp.2d 1087 (N.D. Cal.

2009)) ("*WebXChange I*") (dismissing Microsoft's declaratory judgment claims for non-

infringement by Microsoft and its unidentified "customers" where Microsoft premised jurisdiction

on (a) the patentee's prior suit against specifically identified Microsoft customers that used

Microsoft's Visual Studio software to make the allegedly infringing products, and (b) Microsoft's

potential indemnity obligations); *Microsoft Corp. v. WebXchange Inc.*, No. 09-484-JJF, 2009 WL

3534845 (D. Del. Oct. 30, 2009) ("*WebXChange II*") (same for declaratory judgment claims

concerning Microsoft's Virtual Earth and MapPoint software).[6]

In *WebXChange II*, for example, the court found that infringement accusations against

Microsoft's customers did not give rise to declaratory judgment jurisdiction for Microsoft in part

---

[5] Even if Microsoft were required to indemnify AT&T, such would create a controversy at most regarding AT&T's specific use of Mediaroom in U-verse.  Even after *MedImmune*, a component supplier can not seek a declaration that its unidentified customers—who are not parties to the lawsuit—do not infringe.  Opening up declaratory judgment jurisdiction that far would subject every patent owner who asserts its patent to litigation brought by each alleged infringer's component suppliers and all of that supplier's other customers.  *See Microchip Tech*, 441 F.3d at 943 ("While Microchip's customers may or may not have had an 'adverse legal interest' or have been at 'legal risk,' they were not parties to this action.").  While the *Microchip* court applied the pre-*MedImmune* reasonable apprehension test, its reasoning with respect to the requirement to establish "adverse legal rights" and "legal risk" remains unaffected and was reaffirmed post-*MedImmune* by the Federal Circuit in *Benitec*.  *Benitec*, 495 F.3d at 1344.

[6] Although in *WebXChange I*, the patent owner voluntarily agreed that Microsoft's software did not directly infringe, and agreed not to sue Microsoft in relation to certain prior acts that Microsoft alleged exposed it to inducement liability, *Id.* at 1088-89, the court in *WebXChange II* determined that such agreements were not necessary to grant a motion to dismiss.  *Id.* at *4.

because the patent owner's suit against the customers accused a larger system of which the Microsoft software was "just one part."  *Id.* at *3.  Similarly here, Microsoft's Complaint does not allege that it supplies the entire AT&T U-verse set top boxes that are now issue, or any hardware within those boxes, or any other components or functionality within those boxes beyond just one part—the Mediaroom software.  (D.I. 23, p. 2 ¶ 9 ("a U-verse subscriber is provided with a set-top box with certain digital video recording and playback functionality.  The set-top boxes run Microsoft software known as Mediaroom.")).  This Court too should reject Microsoft's attempt to extend declaratory judgment jurisdiction beyond its Constitutional limits.

### F. Microsoft's Claims Do Not Allege Any Real or Definite Controversy.

For the Unidentified Customer Claims, Microsoft has not identified any specific customers that are currently at risk of being sued for infringing the TiVo patents.  Nor does Microsoft allege any facts to substantiate any fear that it, or any of its unidentified customers, are currently under threat of litigation regarding these patents.  The allegations in Microsoft's Complaint do not provide any way to tell now whether any of the unidentified customers, or their unspecified products, would arguably have functions, features, or modes of operation meeting any claim of TiVo patents, if and when they ever come into existence.  Microsoft's claims therefore improperly seek an advisory opinion from this Court, based on an assumed, hypothetical state of facts about what these mystery customers and indefinite products might potentially have in terms of their particular use of Mediaroom and their particular structure and operation.  Such claims must be dismissed.  *MedImmune*, 549 U.S. at 127 (finding that declaratory judgment jurisdiction requires "that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' ") (quoting *Aetna*, 300 U.S. at 240-41).

It is a "bedrock rule that a case or controversy must be based on a *real* and *immediate* injury or threat of future injury that is *caused by the defendants* - an objective standard that cannot be met by a purely subjective or speculative fear of future harm."  *Prasco*, at 1339.  "This

'immediacy and reality' inquiry can be viewed through the lens of standing." *Id. at 1338.* To satisfy standing, the plaintiff must allege (1) an injury-in-fact, i.e., a harm that is "concrete" and actual or imminent, not "conjectural" or "hypothetical," (2) that is "fairly traceable" to the defendant's conduct, and (3) redressable by a favorable decision." *Id.* (citations and quotations omitted). Microsoft's Complaint fails to clear each hurdle.

First, an injury-in-fact must be "personal," "concrete and particularized," and "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992); *Warth v. Seldin*, 422 U.S. 490, 501 (1975). In the context of a patent infringement action, this requires a factual showing of a situation "where a patentee asserts rights under a patent based on ***certain identified*** ongoing or planned activity of another party, and where ***that party*** contends that it has the right to engage in the accused activity without license[.]"[7] *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007) (emphasis added). The parties and activities in Microsoft's complaint are anything but "certain" or "identified." In the Mediaroom and Unidentified Customer Claims, Microsoft does not identify any particular customers, let alone any particular products, that allegedly use Mediaroom in any manner, let alone in an infringing manner.[8]

In the patent litigation context, the "reality" requirement "is often related to the extent to which the technology in question is 'substantially fixed' as opposed to 'fluid and indeterminate' at the time declaratory relief is sought." *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 882 (Fed. Cir. 2008) (citing *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1379 (Fed. Cir. 2004)). Microsoft's Complaint leaves the Court with no actual controversy concerning any certain, identified and potentially infringing products (or parties) to adjudicate. Given that Microsoft's Complaint alleges at most that Mediaroom is one component of the unspecified

---

[7] Microsoft has not alleged that any of the unidentified customers contend they have a right to engage in their unspecified uses of Mediaroom without a license from TiVo.

[8] Should the Court decide not to dismiss Microsoft's Complaint, TiVo moves for a more definite statement requiring Microsoft to identify each allegedly non-infringing customer, identify each customer product that uses Mediaroom, identify the basis for any actual controversy between TiVo and Microsoft regarding such customers and products, and provide Microsoft's basis for asserting non-infringement of the TiVo patent by Microsoft and each such customer. *See* FED. R. CIV. P. 12(e).

customer products, there is no directly infringing product to compare to the claim elements and no basis for a court to render an infringement judgment based on specific, identifiable conduct. " 'The greater the variability of the subject of a declaratory-judgment suit, particularly as to its potentially infringing features, the greater the chance that the court's judgment will be purely advisory, detached from the eventual, actual content of that subject - in short, detached from eventual reality.' " *Cat Tech.*, 528 F.3d at 882 (quoting *Sierra*, 363 F.3d at 1379).

Second, Microsoft's Complaint does not identify any controversy that arises from any alleged conduct by TiVo. For subject-matter jurisdiction to exist, there must be a real and immediate injury or threat of future injury that is caused by the declaratory-judgment defendants. *Prasco*, 537 F.3d at 1334 ("Absent an injury-in-fact fairly traceable to the patentee, there can be no immediate and real controversy."). The mere "potentially adverse" "existence of a patent is not sufficient to establish declaratory judgment jurisdiction." *Id.* at 1338. There is no allegation that TiVo has ever asserted that Microsoft, or any Microsoft customer besides AT&T, infringes the TiVo patents. Given the absence of any allegations suggesting that Microsoft or any of Microsoft's unidentified customers face any real and immediate "legal risk" due to TiVo's actions (as opposed to Microsoft's subjective fears) with respect to the TiVo patents, dismissal of the Unidentified Customer Claims is required because Microsoft's Complaint wholly fails to establish the existence of an actual controversy.

Finally, attempting to litigate the Mediaroom or Unidentified Customer Claims now would not resolve any potential infringement disputes between TiVo and Microsoft's customers. Microsoft has not alleged that its customers are mere conduits for Microsoft's products, but rather its customers independently created their own systems that might (or might not) infringe. Accordingly, even if Microsoft were granted a declaratory judgment that its activities in connection with Mediaroom do not infringe, this declaration would not: (1) resolve whether any of Microsoft's unidentified customers have themselves created infringing systems; nor (2) preclude a future lawsuit charging those customers with infringing based on their particular use of Mediaroom in an actual DVR. *See WebXChange II*, 2009 WL 3534845 at *4 (finding that "a

declaration that [Microsoft's software] does not infringe the patents-in-suit will not prevent [the patent owner] from suing other Microsoft customers for infringement based on *their* use of [the Microsoft software].") (emphasis added).  Neither would such a declaration prevent TiVo from suing Microsoft for its future acts that induce such infringement.

Microsoft's claims merely present the Court with an inchoate potential dispute in which the Court could not hope to make an infringement determination regarding the universe of potential DVR devices and other instrumentalities that might use Mediaroom or the manner in which they may use that software.  Were the Court to attempt to reach the merits of Microsoft's amorphous and indeterminate claims, it would merely be providing an advisory opinion regarding potential future infringing activities.  This is impermissible under our Constitution.  *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions.").

### G.    The Court Has Broad Discretion to Dismiss Microsoft's Mediaroom and Unidentified Customer Claims.

Even where jurisdictional prerequisites are satisfied (a feat that, as explained above, Microsoft's Complaint does not even attempt), the Court retains a unique breadth of discretion to refuse to exercise jurisdiction under the Declaratory Judgment Act.  *Wilton v. Seven Falls, Co.*, 515 U.S. 277, 286-87 (1995).  A court is free to consider the "equitable, prudential, and policy arguments" in reaching a decision regarding discretionary dismissal.  *MedImmune*, 549 U.S. at 136.  This includes "any inequitable conduct on the part of the party seeking the declaration."  FED. PRAC. & PROC. § 2759 (citing *Abbot Labs. v. Gardner*, 387 U.S. 136, 155 (1967), *overruled in part on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977)).

Among other reasons, a complaint should be dismissed when the declaratory judgment device is used as a "tactical measure," such as improving the plaintiff's posture in negotiations, which is "not a purpose that the Declaratory Judgment Act was designed to serve."  *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 815 (Fed Cir. 1996), *overruled in part on other grounds, MedImmune*, 549 U.S. 118.  Here, four months after TiVo filed this suit against AT&T in regards to U-verse, Microsoft filed its motion to intervene (D.I. 22) and, four days later, filed a complaint against

TiVo in the Northern District of California.  *Microsoft Corp. v. TiVo Inc.*, No. 5:10-CV-240 (N.D.

Cal.).  Microsoft then unabashedly admitted during the April 14 scheduling conference with this

Court that it intends to use any counterclaims that TiVo files against Microsoft or its customers in

response to Microsoft's Complaint here as the basis for a motion transfer this matter to California.

Meanwhile, if the Mediaroom and Unidentified Customer Claims are not dismissed, TiVo faces

the very real prospect that it must file such counterclaims to prevent any later assertion that it has

waived any patent infringement claims that it may ultimately have against Microsoft or its

presently unidentified customers.  *See, e.g., Vivid Techs., Inc. v. Am. Science & Eng'g Inc.*, 200

F.3d 795, 801-02 (Fed Cir. 1999) ("[A]n infringement counterclaim is compulsory in an action for

declaration of non-infringement.").  Microsoft should not be permitted to raise indeterminate

declaratory judgment claims as a tactic to put TiVo in a double-bind of choosing either to

potentially lose its chosen forum for the present dispute with AT&T or potentially lose its right to

assert any future claims it may have against direct and indirect infringers.

A court may also decline to exercise jurisdiction when the declaratory judgment device is

being used to undermine the value of the patent so as to impede its licensing to a third party.  *EMC

Corp.*, 89 F.3d at 814.  Microsoft's claims here are adapted to exactly that purpose—they seek to

force TiVo to exhaust its patent rights by negotiating with Microsoft, rather than any direct

infringers, to resolve the universe of potential customers and end products that may use

Mediaroom in any way.  *Cf. Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008)

(finding that a license to a supplier may in certain circumstances terminate a patentee's ability to

assert its patent rights against the supplier's customers).

Further, "[i]n the declaratory judgment context, the normal principle that federal courts

should adjudicate claims within their jurisdiction yields to considerations of practicality and wise

judicial administration."  *Wilton*, 515 U.S. at 288.  Attempting to adjudicate the Mediaroom and

Unidentified Claims here and now, if even possible, would be impractical, would unnecessarily

burden the Court by creating disputes where there presently are none, and would throw this case

into a wholly unnecessary administrative quagmire.  If required to attempt to prove the universe of

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served on counsel of record by electronic filing and electronic service this April 21, 2010.

_/s/_  Ellisen S. Turner

PLAINTIFF TIVO INC.'S MOTION TO DISMISS THE
MEDIAROOM AND UNIDENTIFIED CUSTOMER CLAIMS
FROM MICROSOFT'S COMPLAINT IN INTERVENTION

potential indirect liability for Microsoft here, TiVo would be forced to establish the direct liability of the multitude of presently unidentified customers (with whom TiVo otherwise has no present dispute )—exactly the same liability that would need to be established in a direct suit against the customers themselves should such a dispute ever arise. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement.").  Discovery into that liability would need to be taken from those as yet unidentified and innumerable customers in the posture of third parties, or in new matters filed against each of them individually.  Maintenance of such a suit would add a layer of difficulty to any settlement or licensing discussions with those customers, who would have a strong incentive to wait for resolution of this case before negotiating settlement for their own direct infringement.  Thus, mere maintenance of this suit would also hamper TiVo's ability to avoid burdening the Court by settling any potential infringement claims with the potential direct infringers.  Plainly, the declaratory judgment action that Microsoft proposes would result in a cumbersome, impractical, and ultimately incomplete litigation.

## III.   CONCLUSION

Microsoft's attempt to force TiVo to effectively litigate or abandon all of its patent claims—right here and now, against an unknown universe of unidentified Microsoft customers and unspecified customer products—must fail.  "A patentee has no obligation to spend the time and money to test a competitors' product nor to make a definitive determination, at the time and place of the competitors' choosing, that it will never bring an infringement suit." *Prasco*, 537 F.3d at 1341.  TiVo respectfully requests that the Court enter the attached proposed order and dismiss for lack of jurisdiction all claims in Microsoft's Complaint in Intervention that are not specifically limited to infringement by AT&T U-verse.

Respectfully submitted,                    Dated:  April 21, 2010


By: _____ /s/ *Ellisen S. Turner* _____
                    Ellisen S. Turner

PLAINTIFF TIVO INC.'S MOTION TO DISMISS THE
MEDIAROOM AND UNIDENTIFIED CUSTOMER CLAIMS
FROM MICROSOFT'S COMPLAINT IN INTERVENTION

PARKER, BUNT & AINSWORTH, P.C.
Robert M. Parker
State Bar No. 15498000
rmparker@pbatyler.com
Robert Christopher Bunt
Sate Bar No. 00787165
rcbunt@pbatyler.com
Charles Ainsworth
State Bar No. 00783521
charley@pbatyle.com
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Facsimile:(903) 533-9687

IRELL & MANELLA LLP
Morgan Chu (*Pro Hac Vice*)
mchu@irell.com
Andrei Iancu (*Pro Hac Vice*)
aiancu@irell.com
Perry Goldberg (*Pro Hac Vice*)
pgoldberg@irell.com
Ellisen S. Turner (*Pro Hac Vice*)
eturner@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:(310) 277-1010
Facsimile:(310) 203-7199

Attorneys for Plaintiff TiVo Inc.

PLAINTIFF TIVO INC.'S MOTION TO DISMISS THE
MEDIAROOM AND UNIDENTIFIED CUSTOMER CLAIMS
FROM MICROSOFT'S COMPLAINT IN INTERVENTION