**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **TIVO INC.,** | § | **Case No.   2:09-CV-0259-DF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AT&T INC.,** | § | |
| | § | |
| **Defendant,** | § | |
| | § | |
| **and** | § | |
| | § | |
| **MICROSOFT CORPORATION,** | § | |
| | § | |
| **Intervenor.** | § | |

**MOTION BY MICROSOFT AND AT&T OPERATIONS TO TRANSFER VENUE TO
THE NORTHERN DISTRICT OF CALIFORNIA UPON SEVERANCE**

## Table of Contents

**Page**

I.    INTRODUCTION ........................................................................................... 2

II.   FACTUAL BACKGROUND.......................................................................... 2

      A.    The Accused Products Are Set-Top Boxes with DVR Functions
            Provided to U-Verse Subscribers in the Northern District of California
            and Elsewhere. ....................................................................................................... 2

      B.    TiVo's Infringement Contentions Are Centered on Processor Chips
            and Software Developed in the Northern District of California. ............................ 3

      C.    The Core Witnesses and Evidence for the Technology Underlying
            the Accused Products Are in the Northern District of California ........................... 4

      D.    The Party and Non-Party Witnesses and Evidence for both Sides
            regarding the Asserted Patents Are in the Northern District of California............. 4

      E.    Many Material Non-Party Witnesses and Other Evidence regarding
            Invalidity Defenses Are in the Northern District of California. ............................. 5

      F.    The Eastern District of Texas Has No Genuine Local Connection to
            the Dispute. ............................................................................................................ 6

III.   ARGUMENT ................................................................................................. 6

      A.    The Private Interest Factors Favor the Requested Transfer.................................... 8

            1.      Availability of subpoena power in transferee district and lack of
                        such power in this district ................................................................ 8
            2.      Increased convenience to willing witnesses in transferee district .............. 9
            3.      Superior access to sources of proof in transferee district ........................ 10

      B.    The Public Interest Factors Favor Transfer to the Northern District
            of California. ......................................................................................................... 11

            1.      The absence of a localized interest in this district ................................... 11
            2.      Neutrality of remaining public interest factors .......................................... 12
            3.      Neither the *EchoStar* litigation nor the *Verizon* case justifies
                        denying transfer of this case to the Northern District of California. ........ 13

      C.    TiVo's Claims Based on U-verse Set-Top Boxes Could Have Been
            Brought in the Northern District of California. .................................................... 15

IV.   CONCLUSION............................................................................................. 15

## Table of Authorities

**Cases**                                                                                      **Page(s)**

*Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660 (E.D. Va. 1998)................................. 15

*ICHL, LLC v. NEC Corp.*, Nos. 5:08-CV-65, 5:08-CV-175, 5:08-CV-177, 2009 WL
    1748573 (E.D. Tex. June 19, 2009) ......................................................................... 8

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009)........................................*passim*

*In re Hoffman-La Roche, Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) ............................... 7, 12

*In re Nintendo Co.*, 589 F.3d 1194 (Fed. Cir. 2009)........................................... 7, 9, 10

*In re TS Tech*, 551 F.3d 1315 (Fed. Cir. 2008)....................................................*passim*

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004) ................................................. 15

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc)......................... 7

*In re Volkswagen of Am., Inc.*, 566 F.3d 1349 (Fed. Cir. 2009)................................. 13

*Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897 (Fed. Cir. 2008).................................. 13

*Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, No. 2:09-CV-105-TJW,
    2009 WL 3784371 (E.D. Tex. Nov. 10, 2009) .......................................................... 7

**Other Authorities**

28 U.S.C. § 1400(b) ......................................................................................... 15

28 U.S.C. § 1404(a) .....................................................................................*passim*

The claims pertaining to Microsoft and AT&T Operations should proceed in the Northern District of California, the clearly more convenient venue. The Northern District of California—specifically the San Francisco Bay Area—is home to both party and non-party witnesses with knowledge of the business and technical aspects of the technology at issue in this case. In fact, all of the non-party witnesses identified by TiVo reside in that district. The Northern District of California is also the location of documentation relevant to the accused digital video recording functionality, the location where Microsoft Mediaroom was developed, the location of TiVo's headquarters, and the location where all of the inventors of the asserted patents reside. No documents or witnesses related to the accused devices or accused functionality are located in or near Marshall, Texas.

The only connections to the Eastern District of Texas are sales of the accused technology in the Dallas-Fort Worth metropolitan area (approximately 150 miles from Marshall) and the Court's previous disposition of a suit involving different patents and entirely different parties and technology. Those considerations do not outweigh the convenience that would result from having this case proceed in the Northern District of California. Accordingly, Microsoft Corporation and proposed intervenor AT&T Operations, Inc. move pursuant to 28 U.S.C. § 1404(a) to transfer the claims pertaining to them to the Northern District of California.[1]

---

[1] As detailed in AT&T Operations' pending Motion to Intervene and the parties' Motion to Sever and Stay, AT&T Inc. is a holding company without any employees, sales representatives, or distributors. It does not own, operate, provision or maintain the U-verse IPTV service, and it does not make, use or distribute any product. AT&T Operations, Inc. is the party responsible for the distribution of the accused U-verse set-top boxes, which run Microsoft's Mediaroom software. As a result, Microsoft, AT&T Inc., and AT&T Operations have asked the Court to sever the claims involving Microsoft and AT&T Operations from the peripheral claims involving AT&T Inc.

## I.      INTRODUCTION

Fundamentally, this action is a dispute by a Northern California patent owner aimed at technology developed in Northern California.  The targeted technology is Mediaroom software for client devices, which Microsoft provides for incorporation into the U-verse set-top boxes accused by TiVo.  Because U-verse is available in the Northern District of California, TiVo could have brought its claims for relief in that venue.  Given the strong ties of the Northern District of California to the patents, to the technology underlying the accused products, to the witnesses, to the evidence and to the parties, that is where the dispute should now be transferred.

The factors that govern transfer upon severance fall decidedly in favor of this motion.  As detailed below, the purported inventions allegedly were conceived by eight inventors who all reside in the Northern District of California  The knowledgeable witnesses and documents regarding the design of the technology underlying the accused U-verse set-top boxes are in the Northern District of California.  Dozens of party and non-party witnesses alike—including the technical witnesses for both sides on issues of infringement and invalidity—are in the Northern District of California.  The accused U-verse boxes are distributed throughout the Northern District of California.  And the Northern District of California is TiVo's home district.

The Eastern District of Texas has no comparable connection to the parties or the dispute.

## II.     FACTUAL BACKGROUND

### A.      The Accused Products Are Set-Top Boxes with DVR Functions Provided to U-Verse Subscribers in the Northern District of California and Elsewhere.

In its Complaint, TiVo asserts U.S. Patents Nos. 6,233,389, 7,493,015, and 7,529,465 (the "'389, '015, and '465 patents") against the "U-verse product and/or service."[2] [E.g., Dkt. 1

---

[2] The '389 patent relates to a multi-media system for playing and recording television programs with the "option of instantly reviewing previous scenes within the program" or "stor[ing] selected television broadcast programs while the user is simultaneously watching or

at ¶¶ 8, 17, and 26]  U-verse is an "Internet Protocol Television" or "IPTV" multicast service that subscribers receive through appropriately configured set-top boxes.  [Barker Decl. ¶¶ 4-5] TiVo's infringement theories focus on digital video recording or "DVR" functions allegedly included in the accused U-verse set-top boxes.  For example, TiVo contends that each limitation of claim 1 of the '465 patent is satisfied by such alleged DVR functions.  [Counsel Decl. Ex. 1 at Claim Chart C, pp. 1-4 (E.g., "An AT&T U-verse DVR performs a process of digital video recording")]  TiVo's infringement contentions for the '389 and '015 patents are similarly directed to alleged DVR functions of U-Verse set-top boxes.  [*Id*., at Claim Charts A & B]

### B.    TiVo's Infringement Contentions Are Centered on Processor Chips and Software Developed in the Northern District of California.

U-verse set-top boxes with DVR functions are special-purpose computers for receiving and watching IPTV and recording or playing back programming.  [2d Baldwin Decl. ¶ 2]  As with other computers, U-verse set-top boxes work through processor chips that execute software. [*Id*. ¶ 3]  For each asserted patent, TiVo's infringement contentions expressly rely on processor chips or software developed by engineers in the Northern District of California.  For example, TiVo's contentions for almost every limitation in claims 31 and 61 of the '389 patent explicitly rely on secure media processors known as the "SMP8630 Series" and "DVR software" that executes on those processors.  [See excerpts from TiVo's contentions at Appendix A hereto; Counsel Decl. Ex. 1, Claim Chart A]  TiVo's infringement contentions for the '015 patent and the '465 patent similarly rely on alleged functionality provided by "DVR software" executing on an SMP8630 Series processor.  [Counsel Decl. Ex. 1, Claim Charts B & C]

---

reviewing another program." ['389 patent col. 1:66-col. 2:3]  The '015 patent provides for an "automatic playback overshoot correction system [that] predicts the position in the program material where the user expects to be when the user stops the fast forward or reverse progression of the program material." ['015 patent abst.]  The '465 patent purports to be a continuation from the application that led to the '389 patent.

**C.     The Core Witnesses and Evidence for the Technology Underlying the Accused Products Are in the Northern District of California**

The "DVR software" cited in TiVo's infringement contentions is the Mediaroom software for client devices developed and maintained by Microsoft engineers in the Northern District of California.  [2d Baldwin Decl. ¶ 4]  Microsoft has identified six of the Mediaroom engineers as witnesses and a seventh witness who is involved in Mediaroom marketing.  All eight of those witnesses are in the Northern District of California.  [Appendix B hereto; Counsel Decl. Ex. 6]  Indeed, they work at Microsoft's campus in Mountain View, California, barely eight miles from TiVo, within the Northern District of California  [*Id.*]  That campus is also where Microsoft maintains the source code and technical documentation for Mediaroom software  [*Id.*]

The SMP8360 Series cited in TiVo's infringement contentions is a family of secure media processors developed and offered by Sigma Designs, Inc.  [Counsel Decl. Ex. 2, pp. 1, 5-7, 10, 15]  The Sigma Design product engineering and development center also is located near TiVo in Milpitas, California.  [Counsel Decl. Ex. 2, pp. 15]  Consequently, the knowledgeable witnesses and documents regarding the SMP8360 Series processors that execute the Mediaroom software in U-verse set-top boxes are within the Northern District of California.  [Appendix C hereto; Counsel Decl. Ex. 6]

**D.     The Party and Non-Party Witnesses and Evidence for both Sides regarding the Asserted Patents Are in the Northern District of California**

Both sides have identified the eight named inventors on the '389, '015 and '465 patents as witnesses.  [Appendices B& C; Counsel Decl. Exs. 4 & 6]  Each of those eight witnesses is located in one of the following communities within the Northern District of California:  Los Gatos, Milpitas, San Francisco, Fremont, Menlo Park, Cupertino, Sunnyvale or Palo Alto. [Counsel Decl. Ex. 5]  Seven of the eight are non-party witnesses, no longer employed by TiVo.

4

[Appendix C; Counsel Decl. Ex. 4, pp. 3-4]  Both sides have also identified the lawyers who prosecuted the asserted patents as witnesses.  [Appendix C; Counsel Decl. Exs. 4 & 6]  Both lawyers are in the Northern District of California, as are their prosecution files.  [*Id.*]

TiVo also has identified four current officers and one former officer as witnesses regarding TiVo's alleged use and the purported value of the claimed inventions.  [Appendix B; Counsel Decl. Ex. 4, pp. 3-4]  All five witnesses are in the Northern District of California.  [Counsel Decl. Ex. 3, pp. 37, 101]  Given TiVo's location in Alviso, its marketing, licensing and sales records also are located in the Northern District of California.  [*Id.*]

### E.      Many Material Non-Party Witnesses and Other Evidence regarding Invalidity Defenses Are in the Northern District of California.

Microsoft and AT&T have identified several non-party witnesses in support of their invalidity defenses who are located in the Northern District of California.  [Appendix D; Counsel Decl. Ex. 6]  For example, there are more than 20 named inventors, authors or sources of prior art disclosed in Microsoft's and AT&T's invalidity contentions who reside in the Northern District of California.  [*Id.*; Counsel Decl. Ex. 9]  For example, Microsoft and AT&T identified at least 4 named inventors, authors or sources of prior art who reside in San Francisco, 3 who reside in San Jose, 3 who reside in Redwood Shores, 2 who reside in Palo Alto, and 2 who reside in Sunnyvale.  [*Id.*]  Microsoft and AT&T also identified non-party witnesses who reside in other San Francisco Bay Area communities, including Milpitas, San Mateo, Foster City, San Carlos, Mountain View, Redwood City, and Woodside, California.  In addition, there are other non-party witnesses who reside in other communities located within the Northern District of California, including Mendocino, Morgan Hill, and Campbell, California. [*Id.*]

**F.      The Eastern District of Texas Has No Genuine Local Connection to the Dispute.**

The Eastern District of Texas lacks a genuine local connection to any relevant AT&T entity or to the allegedly infringing conduct.  U-verse is available to subscribers in more than 20 different states, including California.  [Barker Decl. ¶ 11]  It is available throughout the Northern District of California, including in the cities of San Francisco, San Jose, Oakland, Freemont, Sunnyvale, Santa Clara, Santa Rosa, Petaluma, and Napa..  [*Id.*]  Furthermore, AT&T Operations maintains its facility for post-deployment testing of U-verse set-top boxes in that district.  [*Id.* ¶ 8]

Although U-verse is available in the Dallas-Fort Worth area, it is not provided within 100 miles of Marshall or Texarkana.  [*Id.* ¶ 11]  No persons involved with the DVR aspects of U-verse service are based in or within 100 miles of Marshall or Texarkana, Texas.  [*Id.* ¶ 6]  No research, development, integration or testing of U-verse set-top boxes has taken place in or within 100 miles of Marshall or Texarkana.  [*Id.*]  No management activities, financial analysis, or financial reporting for the U-verse business have taken place in or within 100 miles of Marshall or Texarkana.  [*Id.*]  No potential witnesses, document custodians, documents or other evidence regarding U-verse DVR set-top boxes are located within 100 miles of Marshall or Texarkana.  [*Id.* ¶ 7]

## III.     ARGUMENT

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought."  A motion to transfer should be granted when the transferee forum is "clearly more convenient" than the plaintiff's chosen forum based on private interest factors—"(1) the relative ease of access to sources of proof; (2) the availability of

compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive"—and public interest factors—"'(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (citation omitted) (applying 5th Cir. law).  The plaintiff's choice of forum is not a separate factor because any weight due the plaintiff's preference is already reflected in the moving party's burden of persuasion.  *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

Three recent Federal Circuit decisions underscore why a transfer is warranted in this case:  the parties, their witnesses and key evidence are located in the Northern District of California, and the Eastern District of Texas has no unique connection to this dispute.  *See In re Nintendo Co.*, 589 F.3d 1194 (Fed. Cir. 2009); *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009).

Courts in the Eastern District of Texas stress the importance of a connection between the facts underlying the claim at issue and the venue, holding that "[t]ransfer is appropriate where none of the operative facts occurred in the division and where the division had no particular local interest in the outcome of the case."  *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, No. 2:09-CV-105-TJW, 2009 WL 3784371, at *3 (E.D. Tex. Nov. 10, 2009) (ordering transfer where transferee district was site of development of allegedly infringing product and home to key party witnesses and documentary evidence).

Magistrate Judge Craven identified a core principle to the Eastern District's jurisprudence: "[t]he courts which have transferred cases have emphasized that the plaintiffs did not have any connection with the Eastern District and that, instead, the relevant evidence and witnesses were located in and around the transferee forum." *ICHL, LLC v. NEC Corp.*, Nos. 5:08-CV-65, 5:08-CV-175, 5:08-CV-177, 2009 WL 1748573, at *6 (E.D. Tex. June 19, 2009).

As set forth below, the private and public factors weigh heavily in favor of transferring this case to the Northern District of California, which is a "clearly more convenient" forum.

**A.     The Private Interest Factors Favor the Requested Transfer.**

      **1.     Availability of subpoena power in transferee district and lack of such power in this district**

A transferee forum's superior ability to use compulsory process to secure deposition or trial testimony and other evidence from non-parties weighs heavily in favor of a transfer to that forum. *Volkswagen II*, 545 F.3d at 316.  The Northern District of California has subpoena power over many potentially important non-party witnesses in this case.  Specifically, *seven of the eight named inventors* on the asserted patents are in communities within the Northern District of California and are not employed by any party to this case.  [Appendix C; Counsel Decl. Ex. 4, pp.3-4]  Furthermore, *the lawyers who prosecuted the patents* and the *designers of the SMP8360 processors* featured in TiVo's infringement contentions are in that district.  [*Id.*; Counsel Decl. Ex. 2, pp. 1, 15]  Additionally, as mentioned above, the parties have identified more than 20 non-party inventors, authors or sources of prior art located in the Northern District of California. Most of these non-party individuals live in the San Francisco Bay Area, in close proximity to TiVo and well within the range of the court's subpoena power.  [*Id.*; Appendix D; Counsel Decl. Exs. 2, 6, 9]

Thus, transfer to the Northern District of California would ensure that the court has subpoena power over the numerous, key non-party witnesses.  Given the vast distance between Silicon Valley and the Eastern District of Texas, it is highly likely that many non-party individuals with material knowledge of the asserted patents, the underlying technology, or the prior art will be unwilling to spend time away from their homes, families, and jobs in order to come testify in a lawsuit.  A transfer to the Northern District of California would not only increase the willingness of many of these non-party witnesses, but it would also enable the parties to take advantage of the court's subpoena power.

Conversely, there are *no* significant non-party witnesses in the Eastern District of Texas. Accordingly, this factor favors transfer.  *Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly.").[3]

## 2.    Increased convenience to willing witnesses in transferee district

For those few witnesses who may be willing to take time away from their families and jobs to testify, transfer to the Northern District of California will dramatically increase their convenience and reduce their costs of attendance.

"The convenience and cost of attendance for witnesses is an important factor in the transfer calculus."  *Nintendo*, 589 F.3d at 1198-99 (citing *Genentech*, 566 F.3d at 1343). Additional distance from home leads to added travel time and the associated lodging and meal-related expenses together with increased time away from regular employment duties.  *Id*.  To assess witness costs and convenience, the Fifth Circuit has adopted a 100-mile guideline under which the inconvenience to a witness will be deemed to increase in direct proportion to the

---

[3] The final private interest factor—all other practical problems that make a trial easy, expeditious and inexpensive—is neutral.

distance (above 100 miles) that separates the witness from the plaintiff's selected forum. *Id.* (citing *Volkswagen II*, 545 F.3d at 317); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("[T]he convenience of the witnesses is probably the single most important factor in transfer analysis").

As applied to the facts of this case, the convenience of willing witnesses would be enhanced and their costs reduced by transfer to TiVo's home forum.  Neither Microsoft nor AT&T Operations is aware of any material witnesses for any of the parties who are located in the Eastern District of Texas.  In contrast, the San Francisco Bay Area in the Northern District of California is home to the developers of the Mediaroom software and the developers of the SMP8360 media processors found in the accused U-verse set-top boxes.  [Appendices B & C; Baldwin Decl. ¶¶ 3-4; Counsel Decl. Exs. 4 & 6]  In addition, the named inventors on the asserted patents and TiVo's witnesses regarding its use of the claimed technology all are in communities within the Northern District of California.  [*Id.*]  And as mentioned above, there are an overwhelming number of inventors, authors and other sources of prior art who live in the San Francisco Bay Area and the Northern District of California, generally.  Given that the Eastern District of Texas is more than 1,000 miles from those witnesses, transfer would greatly enhance their convenience and dramatically reduce their costs of participation.

### 3.     Superior access to sources of proof in transferee district

The "relative ease of access to sources of proof" concerns the location of "physical and documentary evidence relevant" to the case, which is an important factor in any transfer analysis. *TS Tech*, 551 F.3d at 1320-21 (rejecting argument that technological advances have reduced the significance of this factor).   "'In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.'"  *Nintendo*, 589 F.3d at 1199 (quoting *Genentech*,

566 F.3d at 1345).  Consequently, the place where evidence about the accused technology is kept weighs in favor of a transfer to that location.  *Id.*

The infringement theories at issue in this case are centered in the Mediaroom software that executes on SMP8630 Series processors in U-verse set-top boxes.  Microsoft developed the software at its Silicon Valley campus and continues to maintain the relevant source code and the vast majority (if not all) of the significant design information there.  Sigma Designs, the developer and supplier of the SMP8630 processors is similarly located in Silicon Valley, near TiVo.  [Counsel Decl. Ex. 2 pp. 1, 5-7, 10 15]

In addition to the records regarding Mediaroom and SMP8630 processors, the Northern District of California is the location of TiVo's documents and the location of evidence relating to the alleged conception and reduction to practice by former TiVo employees of the purported inventions claimed in the asserted patents.  By comparison, there are no significant sources of documents or evidence in this district with respect to the accused technology or the alleged inventions in the asserted TiVo patents.  [Baldwin Decl. ¶ 4; Counsel Decl. pp. 1, 37 & Ex. 4]

**B.    The Public Interest Factors Favor Transfer to the Northern District of California.**

**1.    The absence of a localized interest in this district**

Of the four public-interest factors, one carries particular weight in the present transfer analysis—specifically, the interest of the transferee forum in having localized interests adjudicated at home.  The interest of the Northern District of California in the present dispute is compelling.  The Northern District of California is TiVo's home forum, the location where the claimed inventions allegedly were conceived and reduced to practice, and the location where the Mediaroom software and SMP8360 processors that enable the accused U-verse set top boxes were developed and are maintained.  The Federal Circuit has repeatedly relied on such obvious

connections between the dispute and the transferee forum to mandate a transfer. *Hoffmann-La Roche*, 587 F.3d at 1336 (interest of transferee forum was strong where accused drug was developed and tested in that forum and where the infringement allegations called into question the work and reputation of individuals within that district); *TS Tech*, 551 F.3d at 1321 (location of party offices and witnesses and development of accused product in transferee forum weighed in favor of transfer).

U-verse is available throughout the Northern District of California, including San Francisco, Oakland, Fremont, San Jose, Sunnyvale, Santa Clara, Santa Rosa, Petaluma, and Napa. [Barker Decl. ¶ 11] And while U-verse set-top boxes are widely distributed in more than 20 states around the country, they are not offered in or near Marshall or Texarkana, Texas. [*Id.*] The Eastern District of Texas therefore lacks a local interest in the dispute. *TS Tech*, 551 F.3d at 1321 ("Here, the vehicles containing TS Tech's allegedly infringing headrest assemblies were sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue.").

### 2.      Neutrality of remaining public interest factors

Relative differences in court congestion can play a role in a transfer analysis, but here the dockets of the Eastern District of Texas and the Northern District of California are comparably crowded. The average time to disposition of civil cases is 9.4 months in the Northern District of California and 10.8 months in E.D. Tex. [Counsel Decl. Ex. 7] In any event, even if the pace of litigation were slower in the Northern District of California than here, because "several relevant factors weigh in favor of transfer and others are neutral, [. . .] the speed of the transferee district court should not alone outweigh all of those other factors." *Genentech*, 566 F.3d at 1347.

Similarly, familiarity with the governing law and concerns about conflicts of law do not weigh in favor of keeping the dispute in this district. District courts are all equally capable of

applying patent law.  *TS Tech*, 551 F.3d at 1320 (concluding that all district courts are able to

apply patent law to infringement claims).  Nor are there any issues of conflict of law that should

weigh in the balance of whether to transfer the case.

> **3.   Neither the *EchoStar* litigation nor the *Verizon* case justifies denying transfer of this case to the Northern District of California.**

TiVo has placed great emphasis on the Court's prior experience in the *EchoStar* litigation

and the pendency of the *Verizon* case as a reason to deny any transfer of venue.  [See briefing in

*Verizon* case]  TiVo's suggested basis for that argument is the "*Volkswagen III*" decision:  *In re

Volkswagen of Am., Inc.*, 566 F.3d 1349 (Fed. Cir. 2009).  But *Volkswagen III* addressed much

different facts than this motion to transfer presents to this Court.[4]

As detailed above, this is fundamentally a dispute between a Northern California patent

holder aimed at technology developed and maintained in Northern California.  Not only the

parties, but their material sources of evidence and witnesses are in the Northern District of

California.  Those factors outweigh the partial overlap between this case and the patent claims at

issue in the *EchoStar* and *Verizon* cases.  *See Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d

897, 905 (Fed. Cir. 2008) (treating prior experience of court with some of the patents at issue as

but one of many factors to weigh).

---

[4] In *Volkswagen III*, a Texas patent owner sued 22 automobile companies in one law suit and eight additional automobile companies on the same patents in a second suit.  The defendants were scattered from coast to coast throughout the United States and throughout Germany, Japan and South Korea.  One of the companies in one of the cases moved to transfer to the Eastern District of Michigan.  Unlike the circumstances in this case, the accused technology and the material party and non-party witnesses, documents and sources of evidence regarding that technology and the prior art were not congregated in the transferee district, and the transferee district did not have a uniquely local interest in the dispute as the Northern District of California has in this case.  Because there were no countervailing factors that warranted transfer, the fact that some economy would result from a single court presiding over two cases with identically overlapping patents was enough to leave undisturbed the district court's decision against transfer.

Indeed, the overlap between this case and either the *EchoStar* litigation or the *Verizon* case is small.  The *Verizon* case involves six patents that are not at issue in this case.  Similarly, of the twenty-two claims currently asserted by TiVo in this case, *twenty* pertain to patents that were not at issue in the *EchoStar* litigation (the '465 and '015 patent).  And the two claims from the '389 patent that were asserted against EchoStar are currently rejected in a pending reexamination proceeding before the Patent and Trademark Office.  [Counsel Decl. Ex. 8]  As a result, the patent history for the only two claims that overlap with *EchoStar* is now vastly different because of positions taken by TiVo in response to the examiner's rejections.  [*Id.*]

Finally, the accused products in *EchoStar* were markedly different from the accused products in this case.  The accused EchoStar products were part of a satellite television system that received broadcast television signals.  U-verse, in contrast, is an IPTV system that does not use broadcast signals.  [Barker Decl. ¶ 4]  In a typical satellite broadcast system, subscribers receive signals for all of the television programs showing at a given time on every channel.  In an IPTV system, subscribers receive signals for only those television programs they have requested to watch.  [*Id.*]  Because of these differences—and many others—between an IPTV system and a satellite or other broadcast system, the hardware and software used for an IPTV system is necessarily different than the hardware and software that would be used for the type of satellite system at issue in the *EchoStar* case.  [*Id.*]  As a result, even with respect to the '389 patent, this lawsuit will involve disputed claim terms, non-infringement arguments, and invalidity positions that were not at issue in *EchoStar*.  Thus, the attenuated link between that suit and the present case is not sufficient to overcome the strong connections between the Northern District of California to the witnesses, the dispute and the parties in this case.

C.     **TiVo's Claims Based on U-verse Set-Top Boxes Could Have Been Brought in the Northern District of California.**

A pre-requisite to transfer under 28 U.S.C. § 1404(a) is that the transferee district be one where the claim "might have been brought."  *In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 203 (5th Cir. 2004) ("the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed"; mandating transfer).  That pre-requisite is met for the transfer sought by this motion.

In its complaint, TiVo alleges that "U-verse products and/or service infringe" the '389, '015 or '465 patents for which TiVo seeks injunctive relief and money damages.  TiVo's recently-served contentions clarify that the alleged infringement is based on U-verse set-top boxes, which are distributed to subscribers in more than 20 states, including subscribers in Northern California.  Venue would be proper in the Northern District of California because acts of alleged infringement have occurred there.  *See* 28 U.S.C. § 1400(b) (providing venue in a district where a patent defendant has "committed acts of infringement").  Personal jurisdiction would exist over the proper defendants for the same reason.[5]

IV.    **CONCLUSION**

The case should be transferred to the Northern District of California for disposition.

---

[5] The fact that TiVo named AT&T Inc., a holding company over which California does not have personal jurisdiction, as a defendant does not foreclose the requested transfer.  AT&T Inc. does not use or distribute any service or product, including the accused U-verse set-top boxes.  Consequently, the claim against AT&T Inc. is entirely peripheral to this dispute.  As explained in the concurrent motion to sever and stay, the Court should sever the claims involving Microsoft and AT&T Operations from the claims involving AT&T Inc. in order to effectuate the transfer to the clearly more convenient forum.  "Without the remedy of severance, courts would be powerless to prevent a plaintiff from manipulating the system by joining a peripherally connected defendant to the main action for the sole purpose of 'accentuating the burdens of trial upon a defendant who otherwise would have been entitled to a § 1404(a) transfer.'"  *Corry v. CFM Majestic Inc.*, 16 F.Supp.2d 660, 664 (E.D. Va. 1998).

DATED:  May 28, 2010.                    BAKER BOTTS L.L.P.

                                         By: /s/ *Bryant C. Boren, Jr.*
                                             Bryant C. Boren, Jr., Attorney-in-charge
                                             State Bar No. 02664100
                                             bryant.c.boren@bakerbotts.com
                                             Kevin E. Cadwell
                                             State of Texas Bar No. 24036304
                                             kevin.cadwell@bakerbotts.com
                                             620 Hansen Way
                                             Palo Alto, CA  94304
                                             Telephone:  650.739.7500
                                             Facsimile:  650.739.7699

                                         BAKER BOTTS L.L.P.
                                             Roger Fulghum, State Bar No. 00790724
                                             roger.fulghum@bakerbotts.com
                                             Lisa Kelly, State Bar No. 24041659
                                             lisa.kelly@bakerbotts.com
                                             One Shell Plaza
                                             910 Louisiana
                                             Houston, TX  77002
                                             Telephone: 713.229.1234
                                             Facsimile: 713.229.1522

                                         YOUNG, PICKETT & LEE
                                             Lance Lee, State Bar No. 24004726
                                             wlancelee@aol.com
                                             4122 Texas Blvd.
                                             P.O. Box 1897
                                             Texarkana, TX  75504
                                             Telephone:  903.794.1303
                                             Facsimile:  903.792.5098
                                             *Attorneys for Proposed Intervenor AT&T
                                             Operations, Inc.*

DATED:  May 28, 2010.                    PERKINS COIE BROWN & BAIN P.A.

                                         By: /s/ *Chad S. Campbell*
                                             Chad S. Campbell (*Admitted Pro Hac Vice*)
                                             cscampbell@perkinscoie.com
                                             2901 North Central Avenue, Suite 2000
                                             Phoenix, AZ  85012-2788
                                             Telephone:  602.351.8393
                                             Facsimile:  602.648-7193

PERKINS COIE LLP
  Lauren Sliger (*Admitted Pro Hac Vice*)
  lsliger@perkinscoie.com
  1888 Century Park East, Suite 1700
  Los Angeles, CA  90067-1721
  Telephone:  310.788.3245
  Facsimile:  310.788.3399
PERKINS COIE LLP
  Christopher Kao (*Admitted Pro Hac Vice*)
  ckao@perkinscoie.com
  101 Jefferson Drive
  Menlo Park, CA  94025-1114
  Telephone:  650.838.4406
  Facsimile:  650.938.4406

GILLAM & SMITH, LLP
  Harry L. Gillam, Jr.
  303 South Washington Avenue
  Marshall, TX  75670
  Telephone:  903.934-8450
  Facsimile:  .903.934-9257
  gil@gillamsmithlaw.com
  *Attorneys for Intervenor Microsoft Corporation*

## **CERTIFICATE OF CONFERENCE**

I certify that counsel for AT&T Inc., AT&T Operations, Inc., Microsoft Corporation, and TiVo, Inc. have complied with the meet and confer requirement in Local Civil Rule CV-7(h). This motion is opposed.  The personal conference required by Local Civil Rule CV-7(h) was conducted on May 28, 2010 by telephone.  Roger Fulghum participated for AT&T Inc. and AT&T Operations, Inc.  Chad Campbell participated for Microsoft Corporation.  Ellisen Turner participated for TiVo Inc.  An agreement was not reached because TiVo Inc. opposes the relief requested by this motion.  The discussions have conclusively resulted in an impasse, leaving for the Court to decide the motion.  Counsel for TiVo Inc. agreed that the parties complied with their obligations for conference on this motion.

By:  */s/* Chad S. Campbell _____

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically on May 28, 2010 pursuant to Local Rule CV-5(a) and has been served on all counsel of record who are deemed to have consented to electronic service.

By:  */s/* Chad S. Campbell _____

**APPENDIX A**

| Excerpts of TiVo's Infringement Contentions for '389 Patent [See Counsel Decl. Ex. 1] | |
|---|---|
| 31[a]. A process for the simultaneous storage and play back of multimedia data, comprising the steps of: | |
| 31[b] providing a physical data source, wherein said physical data source accepts broadcast data from an input device, parses video and audio data from said broadcast data, and temporarily stores said video and audio data; | "An AT&T U-verse DVR parses the data. For example, it analyzes a transport stream to pick out video and audio data. *See, e.g.,* TIVO-T259-ATT-00001791 (*SMP8630 Series, Secure Media Processors*), p. 2 ('Transport Demux (RISC)')." |
| 31[c] providing a source object, wherein said source object extracts video and audio data from said physical data source; | "For example, AT&T U-verse DVR *software* extracts video and audio data from the MPEG processor and transfers it. *See, e.g.,* TIVO-T259-ATT-00001791 (*SMP8630 Series, Secure Media Processors*), p.2 (showing 64 wire bus connecting to '[u]p to 512 MB DDR-1 DRAM')." |
| 31[d] providing a transform object, wherein said transform object stores and retrieves data streams onto a storage device; | "AT&T U-verse DVR *software* stores data streams on and retrieves data streams from a hard disk drive (HDD). *See, e.g.,* TIVO-T259-ATT-00001791 (*SMP8630 Series, Secure Media Processors*), p. 2 (showing 'IDE-1' and 'IDE-2' interfaces) . . . ." |
| 31[e] wherein said source object obtains a buffer from said transform object, said source object converts video data into data streams and fills said buffer with said streams; | "AT&T U-verse DVR *software* obtains a buffer, converts video data into data streams and fills the buffer with the streams. *See, e.g.,* TIVO-T259-ATT-00001791 (*SMP8630 Series, Secure Media Processors*), p.2 (showing 64 wire bus connecting to '[u]p to 512 MB DDR-1 DRAM') . . . ." |
| 31[f] wherein said source object is automatically flow controlled by said transform object; | "The AT&T U-verse DVR recording *software* has self-regulating data flow in relate to, for example, the single-port DRAM . . ." |
| 31[g] providing a sink object, wherein said sink object obtains data stream buffers from said transform object and outputs said streams to a video and audio decoder; | "The AT&T U-verse DVR *software* obtains data streams from a buffer retrieved from a transform object and the hard disk drive and outputs the data streams to a decoder. *See, e.g.,* TIVO-T259-ATT-00001791 (*SMP8630 Series, Secure Media Processors*), p.2 (showing 64 wire bus connecting to '[u]p to 512 MB DDR-1 DRAM') . . . ." |

**APPENDIX A**

| Excerpts of TiVo's Infringement Contentions for '389 Patent [See Counsel Decl. Ex. 1] | |
|---|---|
| 31[h] wherein said decoder converts said streams into display signals and sends said signals to a display; | "An AT&T U-verse DVR has a decoder that converts data streams into display signals and sends those signals to a display.  *See, e.g.,* TIVO-T259-ATT-0001791 (***SMP8630 Series, Secure Media Processors***), p. 2 ('2HD Video Decoders (RISC)') . . . ." |
| 31[i] wherein said sink object is automatically flow controlled by said transform object; | "The AT&T U-verse DVR playback ***software*** has self-regulated data flow in relation to, for example, the DRAM . . . ." |
| 31[j] providing a control object, wherein said control object receives commands from a user, said commands control the flow of the broadcast data through the system; and | "The AT&T U-verse DVR ***software*** is responsive to front panel buttons and a remote control.  The ***software*** receives user commands, which control the flow of data through the system, e.g., channel selection, trickplay, etc.  *See, e.g.,* TIVO-T259-ATT-00001791 (***SMP8630 Series, Secure Media Processors***), p. 2 (showing 'Peripheral Input/Output,' connected to 'Front Panel,' 'IR,' etc.) . . . ." |
| 31[k] wherein said control object sends flow command events to said source, transform, and sink objects. | "The ***software*** receives user commands and sends command events to other portions of the ***software*** to control the various functions of the unit, e.g., channel selection, trickplay, picture-in-picture, etc.  *See, e.g.,*  TIVO-T259-ATT-00001791 (***SMP8630 Series, Secure Media Processors***), p. 2 (showing 'Peripheral Input/Output' connected to 'Front Panel,' 'IR,' etc.) . . . ." |

**APPENDIX B**

| N.D. Cal. Party Witnesses Regarding Accused Technology and Asserted Patents [See Counsel Decl. Exs. 4-6] | |
| --- | --- |
| James Baldwin (**Mountain View, CA**) | Design and operation of Microsoft Mediaroom for client devices |
| David Alexander (**Mountain View, CA**) | Design and operation of Microsoft Mediaroom for client devices |
| David Clancy (**Mountain View, CA**) | Design and operation of Microsoft Mediaroom for client devices |
| Alan Merzon (**Mountain View, CA**) | Design and operation of Microsoft Mediaroom for client devices |
| Shannon Vosseller (**Mountain View, CA**) | Design and operation of Microsoft Mediaroom for client devices |
| Jim Long (**Mountain View, CA**) | Design and operation of Microsoft Mediaroom for client devices |
| Ben Huang (**Mountain View, CA**) | Mediaroom marketing |
| James Barton (**Los Gatos, CA**) | Named inventor of asserted '389 and '465 patents; CTO of TiVo |
| Pavel Kovar (**Alviso, CA**) | TiVo Controller |
| Naveen Chopra (**Alviso, CA**) | TiVo Senior VP Corporate Strategy and Dev. |
| Joe Miller (**Alviso, CA**) | TiVo Senior VP Retail, Sales and Marketing |
| Anna Brunelle (**Alviso, CA**) | TiVo CFO |

APPENDIX C

| N.D. Cal. Non-Party Witnesses Regarding Accused Technology and Asserted Patents [See Counsel Decl. Exs. 4-6] | |
|---|---|
| Sigma Designs, Inc. (**Milpitas, CA**) | SMP8360 Series processors |
| Roderick McInnis (**Milpitas, CA**) | Named inventor of asserted '389 and '465 patents |
| Alan S. Moskowitz (**San Francisco, CA**) | Named inventor of asserted '389 and '465 patents |
| Andrew Goodman (**Menlo Park, CA**) | Named inventor of asserted '389 and '465 patents |
| Ching Tong Chow (**Fremont, CA**) | Named inventor of asserted '389 and '465 patents |
| Jean Swey Kao (**Cupertino, CA**) | Named inventor of asserted '389 and '465 patents |
| Wijnan Van Stam (**Sunnyvale, CA**) | Named inventor of asserted '015 patent |
| Robert Vallone (**Palo Alto, CA**) | Named inventor of asserted '015 patent |
| Michael A. Glenn (**Menlo Park, CA**) | Prosecuting attorney for asserted patents |
| Kirk Wong (**San Jose, CA**) | Prosecuting attorney for asserted patents |
| Michael Ramsay (**Bay Area, CA**) | Former TiVo CEO; TiVo products and business |

**APPENDIX D**

| N.D. Cal. Non-Party Witnesses Regarding Prior Art [See Counsel Decl. Exs. 6, 9] | |
|---|---|
| Ash, Robert (**Redwood Shores, CA**) | Author of "Real-Time Encoding and Feeds in Oracle Video Server 1-3" (1998) |
| Bailey, William (**Palo Alto, CA**) | Inventor of U.S. Patent No. 5,805,804 (prior art) |
| Beard, Paul (**Milpitas, CA**) | Inventor of U.S. Patent No. 6,172,712 (prior art) |
| Belknap, William R. (**San Jose, CA**) | Inventor of U.S. Patent No. 5,603,058 (prior art) |
| Boccon-Gibod, Gilles (**San Francisco, CA**) | Inventor of U.S. Patent No. 6,064,794 (prior art) |
| Fitchett, Larry W. (**Morgan Hill, CA**) | Inventor of U.S. Patent No. 5,603,058 (prior art) |
| Hart, Sean C. (**San Jose, CA**) | Inventor of U.S. Patent No. 6,169,843 (prior art) |
| Johnson, Brian (**San Francisco, CA**) | Inventor of U.S. Patent No. 6,169,843 (prior art) |
| Lang, Richard A. (**Mendocino, CA**) | Inventor of U.S. Patent No. 7,272,298 (prior art) |
| Laursen, Andrew (**San Mateo, CA**) | Inventor of U.S. Patent No. 5,805,804 (prior art) |
| Lenihan, Michael P. (**Sunnyvale, CA**) | Inventor of U.S. Patent No. 6,169,843 (prior art) |
| Lindblad, Christopher (**San Carlos, CA**) | Author of "A Programming System for the Dynamic Manipulation of Temporally Sensitive Data" (8/1994) |
| Linden, Brian (**Redwood Shores, CA**) | Author of "Oracle Video Server: Introducing the Oracle Video Server" (1998) |
| Magee, Mark (**Campbell, CA**) | Inventor of U.S. Patent No. 6,169,843 (prior art) |
| McLaren, David L. (**Mountain View, CA**) | Inventor of U.S. Patent No. 6,064,794 (prior art) |

**APPENDIX D**

| N.D. Cal. Non-Party Witnesses Regarding Prior Art<br>[See Counsel Decl. Exs. 6, 9] | |
|---|---|
| Moore, Mark (**Foster City, CA**) | Inventor of U.S. Patent No. 5,805,804 (prior art) |
| Nazem, Farzad (**Redwood City, CA**) | Inventor of U.S. Patent No. 5,805,804 (prior art) |
| Niemczyk, Steven (**San Francisco, CA**) | "Stream Objects: Dynamically Segmented Scalable Media Over the Internet," (6/11/1996) |
| Olkin, Jeffrey C. (**Sunnyvale, CA**) | Inventor of U.S. Patent No. 5,805,804 (prior art) |
| Pawson, Dave (**Palo Alto, CA**) | Inventor of U.S. Patent Nos. 5,864,682 and 5,805,804 (prior art) |
| Porter, Mark A. (**Woodside, CA**) | Inventor of U.S. Patent No. 5,864,682 (prior art) |
| Prather, Matt (**Redwood Shores, CA**) | Author of "Oracle Video Server: Introducing the Oracle Video Server" (1998) |
| Singru, Aditi (**San Francisco, CA**) | Author of "Design and analysis of a video-on-demand server," MULTIMEDIA SYSTEMS, Vol. 5, Issue 4, pp. 238-254 (July 1997) |
| Stansbury, Buddy F. (**San Jose, CA**) | Inventor of U.S. Patent No. 5,603,058 (prior art) |