# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| TIVO INC., | § § § | Case No.  2:09-CV-0259-DF |
| Plaintiff, | § § | |
| v. | § § | |
| AT&T INC., | § § | |
| Defendant, | § § | |
| and | § § | |
| MICROSOFT CORPORATION, | § § | |
| Intervenor. | § | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION TO SEVER AND STAY**

TiVo's scattershot and inconsistent opposition to the Motion to Sever and Stay misunderstands the impetus behind Defendants' motion: namely, AT&T Inc.'s status as a holding company. Defendants ask the Court to sever the claims involving Microsoft and AT&T Operations from those involving AT&T Inc. to effectuate transfer to a clearly more convenient forum, the Northern District of California. As a holding company, AT&T Inc. does not have contacts sufficient for a court in the Northern District of California to exercise personal jurisdiction.[1] As Defendants stated in their motion:

> Thus, the same facts that make it impossible for AT&T Inc. — as a holding company with no product-related business activities — to infringe the asserted patents also prevent this Court from transferring AT&T Inc. to the forum that is clearly more convenient for the real parties involved.

D.E. 71, at 2. Rather than address severance, TiVo spends the bulk of its response attempting to convince the Court that AT&T Inc. is the "mastermind" behind U-verse.[2] In addition to being wrong, TiVo's argument is misplaced. Because TiVo's infringement allegations in this case target the software and functionality of the U-verse DVR set-top boxes,[3] the real defendants in this case are the entities responsible for those boxes and the software running on those boxes— namely, AT&T Operations and Microsoft, respectively.

The question before the Court is *not* the identity of the AT&T entity responsible for the

---

[1] *See* Hoffman v. Blaski, 80 U.S. 335, 344 (1960) (holding that transfer under § 1404(a) requires the transferee venue to have personal jurisdiction over the transferred defendants).

[2] If valid, TiVo's argument that AT&T Inc. is the "central actor" behind the accused U-verse product would moot the personal jurisdiction issue and remove the need for severance. TiVo's argument is a Catch-22 and does *not* support TiVo's opposition to transfer. Moreover, TiVo's evidence consists of out-of-context statements and generalized disclosures to regulatory agencies that are consistent with AT&T Inc.'s status as a holding company. For example, Jeff Weber's statement that AT&T Inc. "makes all the ultimate decisions" referred to decisions on capital allocations. TiVo failed to mention that Mr. Weber, in that same deposition, explicitly denied that AT&T Inc. played a role in the specific engineering and development of U-verse. (Ex. A.)

[3] TiVo's accusations against EchoStar DVRs do not change the analysis. These DVRs were the subject of the EchoStar litigation and TiVo cannot expect, nor can it receive, a double recovery.

allegedly infringing devices—AT&T Operations already stated that it is.  And the issue is *not* whether, under the heightened summary judgment standard, AT&T Inc. should be dismissed from this case—Defendants request no such relief here.  Instead, the issue is whether the Northern District of California—a venue without personal jurisdiction over AT&T Inc.—is the more convenient forum for litigation of the claims involving the *primary* defendants in this case.

Indeed, it is in these unique circumstances that severance is fully warranted.  Without severance, "a plaintiff could preclude the court from considering whether transfer would serve the interest of justice by including a defendant, not subject to suit in the more convenient district, who was in some manner peripherally involved in the alleged wrongdoing."  *Siemens AG v. Sonotone Corp.*, 370 F.Supp. 970 (N.D. Ill. 1973).  TiVo should not be permitted to use a peripheral party as a procedural anchor to prevent transfer to a clearly more convenient forum.  The Court should sever the claims involving Microsoft and AT&T Operations from those involving AT&T Inc. and transfer the primary parties to the Northern District of California.

**A.     The Court Order Cited by TiVo Involved a Completely Different Issue.**

Because it cannot squarely address Defendants' request for severance and stay, TiVo relies heavily on the *Two-Way Media* case without telling the Court the whole story.  When viewed in context, *Two-Way Media* does not support TiVo's arguments and actually lends further support for the very relief Defendants request here.  As an initial matter, Judge Head's order concerning AT&T Inc. in *Two-Way Media* addressed a motion for summary judgment as to AT&T Inc. and turned upon the higher burden of proof required *to dismiss* AT&T Inc.[4]

Here, none of the defendants have moved for dismissal on summary judgment.  Instead,

---

[4]  As the court held, "[v]iewing the evidence *in the light most favorable to TWM*, the Court finds a jury could reasonably find that AT&T Inc. could be responsible for the infringing acts of its subsidiary, if any, under 35 U.S.C. § 271(a)."  *Two-Way Media LLC v. Akamai Tech., Inc.*, No. 2:08-cv-116, D.E. 143, at 3 (emphasis added).  Additionally, the court explicitly left open the possibility for AT&T Inc. to reargue its motion after further discovery.  *See id.*, D.E. 190, at 30.

Microsoft and AT&T Operations have spent the last several months trying *to join* this lawsuit and ensure that the primary parties are involved. Only after AT&T Operations moved to intervene on its own initiative, and only after seeing the compelling arguments in favor of transfer, did TiVo feel the need to amend its complaint to add more parties in a transparent, made-for-litigation attempt to anchor this case in Texas.

However, AT&T Operations is the party responsible for the accused U-verse DVR set-top boxes. TiVo's refusal to assert infringement claims against Microsoft and the Mediaroom software—while at the same time inspecting the Mediaroom source code in California—demonstrates that TiVo is not interested in adding the primary parties. And TiVo's addition of five new defendants in its amended complaint is a desperate attempt to avoid transfer.[5] Indeed, the fact that TiVo added those defendants while this motion is pending demonstrates that the effort to add additional defendants is little or nothing more than a sham.

**B.      Defendants' Approach Here is Similar to the Approach in *Two-Way Media*.**

Like Defendants in this case, the defendants in *Two-Way Media* sought to align the primary parties and to anticipate any issues concerning liability or possible payment.[6] To achieve this end, the court in *Two Way Media* ordered that:

> AT&T Operations, Inc., shall be liable for any damages awarded to plaintiff from 'AT&T' by reason of any finding of infringement of the patents in suit by the U-Verse system as a whole, or any portion thereof, including infringement arising in whole or in part from the activities of the non-party regional carrier subsidiaries of AT&T Inc.

*Two-Way Media*, No. 5:09-cv-476, D.E. 285, at 1.

---

[5] Four of the five new defendants are located in San Antonio. The fifth defendant, Southwestern Bell Telephone, a regional telephone provider located in Dallas, is not subject to personal jurisdiction in California. Like AT&T Inc., it is a peripheral party, and the claims against it should similarly be severed and stayed.

[6] The necessity for such an approach is clearly apparent because TiVo has accused six different AT&T entities of infringement over the same U-verse DVR set-top boxes.

AT&T Operations made a similar stipulation in this case in its Motion to Intervene. *See* Motion to Intervene, D.E. 70, at 1. However, TiVo's expressed concern is whether AT&T Operations is capable of satisfying any possible judgment. Although Defendants assure the Court that AT&T Operations is more than capable of satisfying any judgment, AT&T Inc. will gladly follow the same approach used by the court in *Two-Way Media* and hereby stipulates to be deemed a guarantor of payment of any final judgment awarding damages to Plaintiff if the case is transferred to California.[7] Thus, transfer to a clearly more convenient forum will not prevent or delay TiVo's right to a remedy or its ability to collect the full sum of any awarded damages.[8]

**C.   The *Two-Way Media* Case Supports the Defendants' Motion to Transfer.**

Relying upon the same connections with San Antonio and Austin cited by TiVo in its opposition to the motion to transfer, Judge Head in *Two-Way Media* transferred that case to the Western District of Texas. If, as TiVo argues, the strong connections to the Northern District of California do not outweigh the ties to San Antonio and Austin, then transfer to the Western District of Texas is appropriate.[9] However, Judge Head's opinion in *Two-Way Media* equally supports transfer to the Northern District of California. As Judge Head stated:

> In this case, apart from this Court's having presided over the *AOL* litigation, there is no relevant factual connection between the actions giving rise to this suit and the Corpus Christi Division. It is undisputed that there are no evidence, parties, or witnesses located in the Corpus

---

[7] By this guaranty, AT&T Inc. does not waive its objection to venue and jurisdiction.

[8] Indeed, the Court in *Two-Way Media* actually dismissed AT&T Inc. after it made this identical stipulation. *Two-Way Media*, No. 5:09-cv-476, D.E. 285, at 2. However, as discussed above, the Defendants' motions do not seek the dismissal of AT&T Inc. If the Court grants the motions, the claims against AT&T Inc. would simply be stayed, as a token of good faith, pending resolution of TiVo's accusations against AT&T Operations, the party responsible for the accused boxes.

[9] AT&T Operations does not dispute that litigating this case in San Antonio or Austin would be clearly more convenient than going forward in Marshall. Because of that fact, which TiVo seems to accept and even embrace in its opposition, AT&T Operations moves in the alternative to transfer the case to the Western District of Texas.

> Christi Division. It is undisputed that there have not been and there are currently no U-verse business activities taking place in the Corpus Christi Division, and that the alleged infringing product, U-verse, is not sold within the Corpus Christi Division.

*Two-Way Media*, No. 2:08-cv-116, D.E. 190, at 20.

Similarly, apart from this Court having presided over the *EchoStar* litigation, there is no relevant factual connection between the actions giving rise to this suit and the Marshall Division. No evidence, parties or witnesses are located in or near the Marshall Division. No U-verse activities have taken place in the Marshall Division, and the accused devices, the U-verse DVR set-top boxes, are not sold in the Marshall Division or anywhere within 150 miles of Marshall, Texas. Thus, jurors of the Marshall Division "should not be burdened with hearing disputes arising from the patents at issue which undisputedly have no relation to their community." *See id.* at 22 (holding that the local interest factor "weighs heavily in favor of transfer").

Judge Head also firmly rejected the plaintiff's reliance upon judicial economy. Despite the Court's familiarity with "three of the five patents," it emphasized that the case involved "different parties, two new patents, and a different product." *Id.* at 28. Similarly, this case involves different parties, two new patents, and a different product, and because none of the claim elements previously construed by the Court appear in any claims asserted from the two new patents, "it is uncontested that this case will involve new disputed claim elements." *Id.* at 30.

**D.      Conclusion.**

Because AT&T Inc. is merely a holding company, it is neither subject to personal jurisdiction in the clearly more convenient forum *nor* a primary party to this suit. It is in these unique circumstances that severance is warranted. And because severance will not prevent TiVo from pursuing all of its claims against the primary parties or from collecting the full amount of any damages awarded, the Court should grant Defendants' motions in the interests of justice.

Date: July 12, 2010  Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ Bryant C. Boren, Jr.*
    Bryant C. Boren, Jr., Attorney-in-charge
    State Bar No. 02664100
    Email:  bryant.c.boren@bakerbotts.com
    Kevin E. Cadwell
    State of Texas Bar No. 24036304
    Email:  kevin.cadwell@bakerbotts.com
    BAKER BOTTS L.L.P.
    620 Hansen Way
    Palo Alto, CA 94304
    Telephone:  650.739.7500
    Facsimile:  650.739.7699

    Roger Fulghum
    State Bar No. 00790724
    Email:  roger.fulghum@bakerbotts.com
    Lisa Kelly
    State Bar No. 24041659
    Email:  lisa.kelly@bakerbotts.com
    BAKER BOTTS L.L.P.
    One Shell Plaza
    910 Louisiana
    Houston, Texas 77002
    Telephone:  713.229.1234
    Facsimile:  713.229.1522

    Lance Lee
    Young, Pickett & Lee
    State Bar No. 24004726
    Email:  wlancelee@aol.com
    4122 Texas Blvd.
    P.O. Box 1897
    Texarkana, Texas  75504
    Telephone:  903.794.1303
    Facsimile:  903.792.5098

    **ATTORNEYS FOR DEFENDANT**
    **AT&T INC. AND AT&T OPERATIONS**

Case 2:09-cv-00259-DF Document 101 Filed 07/12/10 Page 8 of 9 PageID #: 2065

By: */s/ Harry L. Gillam, Jr.*
   Harry L. Gillam, Jr.,
   State Bar No. 07921800
   Email: gil@gillamsmithlaw.com
   GILLAM & SMITH, LLP
   303 South Washington Avenue
   Marshall, Texas 75670
   Telephone: 903.934.8450
   Facsimile: 903.934.9257

   Chad S. Campbell
   PERKINS COIE BROWN & BAIN PA
   2901 North Central Avenue, Suite 2000
   Phoenix, Arizona 85012-2788
   CSCampbell@perkinscoie.com
   Telephone: 602.351.8000
   Facsimile: 602.648.7000
   (Admitted Pro Hac Vice)

   Lauren Sliger
   PERKINS COIE BROWN & BAIN PA
   1888 Century Park E., Suite 1700
   Los Angeles, California 90067-1721
   LSliger@perkinscoie.com
   Telephone: 602.351.8000
   Facsimile: 602.648.7000
   (Admitted Pro Hac Vice)

   Christopher Kao
   PERKINS COIE BROWN & BAIN PA
   101 Jefferson Drive
   Menlo Park, California 94025-1114
   CKao@perkinscoie.com
   Telephone: 650.838.4406
   Facsimile: 650.938.4406
   (Admitted Pro Hac Vice)

   **ATTORNEYS FOR INTERVENOR MICROSOFT CORP.**

- 8 -

## **CERTIFICATE OF SERVICE**

    I hereby certify that on July 12, 2010, all counsel of record were served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).


                 */s/   Roger Fulghum*
                  Roger Fulghum