**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| TIVO INC., | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | **CIVIL ACTION NO. 2:09-CV-259** |
| | § | |
| AT&T INC, | § | |
| | § | |
| **Defendant.** | § | |

**O R D E R**

Before the Court is Microsoft and AT&T Operations ("Movants") Motion to Sever and Stay.  Dkt. No. 71.[1]  Also before the Court are TiVo's Response, Movant's Reply, and TiVo's Sur-Reply.  Dkt. Nos. 91, 101, and 108, respectively.  Also pending before the Court is Microsoft and AT&T Operations Motion to Transfer Venue to the Northern District of California Upon Severance.  Dkt. No. 75.  TiVo's response, the Movant's Reply, and TiVo's Sur-Reply are also before the Court.  Dkt. Nos. 85, 102, and 109, respectively.  The Court held a hearing on the motion to transfer on August 19, 2010.  Dkt. No. 125 (hearing transcript).  Having considered all relevant papers and pleadings as well as the arguments of counsel, the Court finds that both motions should be **denied.**

**I. BACKGROUND**

On August 26, 2009, Plaintiff TiVo Inc. ("TiVo") initiated this patent infringement lawsuit against Defendant AT&T Inc ("AT&T") alleging that AT&T infringes certain claims of U.S. Patent No. 6,233,389 ("the '389 patent"), U.S. Patent No. 7,493,015 ("the '015 patent"), and

---

[1]     The electronic docket at entry No. 72 shows another Motion to Sever and Stay submitted by Movants. Upon review, the motions and accompanying exhibits are identical in form and substance.  This is ostensibly a clerical error, and the Court will administratively terminate the motion at Dkt. No. 72.

U.S. Patent No. 7,529,465 ("the '465 patent") (collectively, "the patents-in-suit").  Dkt. No. 1.

This case had been pending before the Honorable T. John Ward, who entered an order of recusal on February 10, 2010.  Dkt. No. 32.  Microsoft Corp. ("Microsoft") moved to intervene and filed its complaint in intervention on January 15, 2010.  The Court subsequently granted Microsoft's motion to intervene.  *See* Mar. 31, 2010 Order, Dkt. No. 41.  On May 28, 2010, AT&T Operations, Inc. ("ATTO") moved to intervene.  Dkt. No. 70.  The Court granted the motion on July 2, 2010.  Dkt. No. 93.  Microsoft and ATTO (collectively "Movants") now move to sever the claims involving them and also move to transfer those claims to the Northern District of California while staying the case against AT&T Inc.

## II. MOTION TO SEVER AND STAY

Federal Rule of Civil Procedure ("Rule 21") allows a court to "at any time, on just terms, add or drop a party" and "sever any claim against a party."  Fed. R. Civ. P. 21.  Courts are given broad discretion in determining whether to sever parties or claims.  *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000).  In determining whether to sever and transfer, courts have looked to three factors: (1) whether the remaining claims are peripheral to the severed claims; (2) whether adjudication of the severed claims would potentially dispose of the remaining claims; and (3) whether the 28 U.S.C. § 1404(a) factors warrant transfer of the severed claims.  *See, e.g.*, *Shifferaw v. Emson USA*, No. 2:09-cv-054, 2010 WL 1064380, at *1 (E.D. Tex. March 18, 2010); *Toshiba Corp. v. Hynix Semiconductor, Inc.*, 2005 WL 2415960, at *4-7 (N.D. Tex. Sept. 20, 2005).

In this case, severance under Rule 21 would not be appropriate.  The Court is not prepared, at this time, to hold that the claims against AT&T Inc. are peripheral to the severed

claims as a matter of law.  Additionally, the 28 U.S.C §1404(a) factors do not warrant transfer of the severed claims.  *See infra* Part III.

With respect to the first factor, Movants argue that the claims involving AT&T Inc. are peripheral to the claims against ATTO and Microsoft because AT&T Inc. is only a holding company and does not perform any cognizable act of patent infringement.  Dkt. No. 71 at 11. Movants add that TiVo has not proffered any evidence that AT&T Inc. directly or indirectly infringes the asserted patents.  *Id*. at 12.  Movants also argue that infringement by ATTO is a predicate for any infringement by AT&T Inc. because AT&T Inc. does not make, use, or sell DVRs.  *Id*. at 12-13.  Movants state, "If direct infringement is shown in this lawsuit, direct infringement will be shown against AT&T Operations.  The presence of AT&T Inc. is superfluous, demonstrating that TiVo's claims against AT&T Inc. are peripheral."  *Id*. at 13.

TiVo responds that the facts show that AT&T Inc. is a central actor behind the accused infringing products.  Dkt. No. 91 at 8.  TiVo contends that publicly available information demonstrates that U-verse is "the result of a centralized and coordinated effort directed by the highest levels of AT&T corporate hierarchy."  *Id.* at 9.  TiVo points to letters by AT&T to the Federal Communications Commission, statements and declarations by AT&T employees, and representations made to the Securities and Exchange Commission.  *Id*.  "As demonstrated by the sworn statements of its employees and its public representations, AT&T Inc. is the ultimate decision maker responsible for the infringing U-verse system," TiVo submits.  *Id*. at 10.

TiVo also disagrees with the Movants' statement that AT&T Inc.'s liability is predicated on that of ATTO.  TiVo argues that AT&T Inc. can be liable for infringing acts of subsidiaries other than ATTO.  According to TiVo, "AT&T has many subsidiaries other than AT&T

Operations, Inc., and AT&T Inc.'s liability can be premised on activities of those other entities." *Id.* at 11.

On balance, TiVo presents the more compelling argument.  First, there is a genuine factual dispute as to the involvement of AT&T Inc. in the U-verse business and operation. Courts have recognized that "[a] patent infringement claim against a distributor is peripheral to a claim against the manufacturer." *LG Electronics, Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 421-422 (E.D. Va. 2000); *Koh v. Microtek, Int'l Inc.,* 250 F. Supp. 2d 627, 632 (E.D. Va. 2003); *Toshiba Corp. v. Hynix Semiconductor, Inc.*, No. Civ.A.3:04-CV-2391-L, 2005 WL 2415960, at *5 (N.D. Tex. Sept. 30, 2005).  Similarly, claims against retailers and resellers have been found to be peripheral to claims against a manufacturer. *Shifferaw*, 2010 WL 1064380, at *3.  The plaintiffs in these cases, however, often failed to argue that parties played a role in manufacture, design, or selling of the accused devices.  For example, in *Shifferaw*, the plaintiff did not even attempt to argue that the Retailer Defendants had any role in the design or manufacture of the accused products. *Shifferaw*, 2010 WL 1064380, at *3.  In *Toshiba Corp.*, Plaintiff Toshiba presented no evidence and did not argue that the defendant distributors solicited orders of the accused devices, or had any role in the design, manufacture, testing or selling of the accused devices. *Toshiba Corp.*, 2005 WL 2415960, at *5.

In this case, AT&T Inc. is neither a distributor nor a retailer.  Further, TiVo argues that AT&T Inc. plays a critical role in the management of the U-verse business and product and that liability against AT&T Inc. can attach through another subsidiary.  A judicial finding that the claims against AT&T Inc. are peripheral to those against Movants therefore amounts to a determination that AT&T Inc.'s acts can be completely divorced from the accused devices.  Such

a determination requires a more fully developed record and would be premature at this time.  In short, this factor does not favor severance in light factual allegations regarding the role of AT&T Inc.

The second factor – whether adjudication of the severed claims would potentially dispose of the remaining claims – appears to be adequately addressed by AT&T Inc.'s offer that it "will stipulate to be bound by any rulings of the transferee court concerning U-verse DVR set-top boxes or the asserted patents, including a ruling that the set-top boxes infringe an asserted patent or that the asserted patents are not invalid."  Dkt. No. 71 at 14.

Movants argue that the third factor favors severance because the § 1404 factors warrant transfer of the severed claims.  Dkt. No. 71 at 14.  For the reasons discussed *infra,* the Court disagrees.  Accordingly, severance would not be appropriate, and Movants' motion to sever and stay should be **denied.**

### III. MOTION TO TRANSFER

### A. Legal Principles

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Section 1404(a) presupposes that the action has been brought in a proper venue but authorizes its transfer to another proper district that is more suited to the convenience of witnesses and the needs of justice.  The Supreme Court has noted that § 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612,

622 (1964). The defendant has the burden to show "good cause" that transfer is appropriate. *In re Volkswagen*, 545 F.3d at 314 ("[I]n order to support its claim for a transfer, [defendant] must satisfy the statutory requirement and *clearly demonstrate* that a transfer is for the convenience of parties and witnesses, in the interest of justice." (emphasis added)).

The Fifth Circuit has made clear that the first determination a district court must make is whether the claims might have been brought in the suggested transferee district. *Id.* at 312-13. After such a determination, the district court must then consider the convenience of the parties in both venues. *Id.* at 314-16; *see also J2 Global Commc'ns Inc. v. Protus IP Solutions, Inc.*, Civil Action No. 6:08-CV-275, 2008 WL 5378010, at *3-6 (E.D. Tex. Dec. 23, 2008) (J. Love). A convenience determination is essentially a balancing of the inconveniences that will transpire as a result of the plaintiff's choice of venue. This balancing of conveniences involves the examination of several private and public interest factors, none of which has dispositive weight. *In re Volkswagen*, 545 F.3d at 315. The private factors address (1) the availability of sources of proof, (2) the court's ability to secure witnesses' attendance, (3) the expense associated with witnesses' attendance, and (4) all other factors relevant in conducting an expeditious and inexpensive trial. *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501(1947)). The public convenience factors address (1) administrative issues and the congestion of the courts' dockets, (2) the local interest in having the dispute decided locally, (3) the courts' familiarity with the controlling law, and (4) the potential conflicts of law issues that may arise. *Id.*

## B. Discussion

As an initial matter, the parties do not appear to dispute that this action might have been brought in the Northern District of California. Therefore, the Court proceeds to consider the

private and public interest factors.

**1. Relative Ease of Access to Sources of Proof**

Movants argue that the infringement theories at issue in this case are centered on the Mediaroom software executed by the U-verse set-top boxes.  Dkt. No. 75 at 14. Movants submit that this software was developed at Microsoft's Silicon Valley campus, which continues to house the relevant source code and the "vast majority" of the design information.  *Id.*  Movants add that the developer of the processors that execute the Mediaroom software, Sigma Designs, is also located in Silicon Valley.  *Id.*

TiVo responds that the Movants focus on the location of evidence related to the Mediaroom software and ignore that there is evidence in Texas about AT&T U-verse products. Dkt. No. 85 at 15.  TiVo argues, "Microsoft's argument that the bulk of the evidence will come from its Silicon Valley campus lacks merit because the infringement issues in this case relate principally to AT&T's accused products and services, not the Mediaroom software."  *Id.*  TiVo adds that the software is *one* component of *some* of the accused products.  *Id.* (emphasis in original).  TiVo also argues that AT&T's statements make clear that a large number of documents will be collected from AT&T offices in Texas.[2]  TiVo also submits that documents from potential non-party witnesses and the files from the related *TiVo v. Echostar* litigation exist in Texas.  *Id*. at 16.

Movants reply that TiVo's allegations target the functionality of the software that controls the DVR set-top boxes, which was developed in northern California.  Dkt. No. 102 at 3.

---

[2]     TiVo repeatedly cites submissions made by AT&T in *Two-Way Media, LLC v. AT&T, Inc.*, No. CC-8-116, which was pending in Southern District of Texas but was transferred to the Western District of Texas upon motion by AT&T.

Movants argue that "TiVo's principal discovery focus from the outset has been the Microsoft Mediaroom source code, which TiVo is currently reviewing *in California*." *Id.* (emphasis in original). TiVo replies that Movant's claim regarding its discovery focus is inaccurate as it has made 146 requests for production to AT&T, of which only three refer to the Mediaroom software. Dkt. No. 109 at 8. TiVo adds that AT&T has refused to provide discovery while the present motions have been pending, which explains why it is currently reviewing the limited Mediaroom source code provided. *Id.*

This factor accounts for the distance that documents or other evidence must be transported from their existing location to the trial venue. *Volkswagen*, 545 F.3d at 316. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). In this case, it is undisputed that the relevant Mediaroom source code is housed and is being reviewed in Northern California. It is also undisputed, however, that evidence related to the AT&T U-verse set-top boxes is located at several AT&T offices located in Texas.[3] Accordingly, relevant evidence exists in California and in Texas.

In *Genentech*, no evidence was housed within Texas. *Genentech*, 545 F.3d at 1345 (favoring transfer when "no evidence is housed within the state of Texas"). Similarly in the *Nintendo* case, the Court found that "[b]ecause most evidence resides in Washington or Japan

---

[3]       Indeed, AT&T moves in the alternative to transfer the case to the Western District of Texas. Dkt. No. 102 at 2.

with none in Texas, the district court erred in not weighing this factor heavily in favor of

transfer." *In re Nintendo*, 589 F.3d 1194, 1199 (Fed. Cir. 2009). In this case, however, there

appears to be not-insignificant evidence present in Texas. *In re Vtech Commc'ns., Inc.*, Misc.

No. 909, 2010 WL 46332, at *2 (Fed. Cir. Jan. 6, 2010) (denying mandamus in part because

Texas distribution center likely contained some documents relevant to the accused devices).

Therefore, relevant evidence would have to be transported regardless of venue, and transporting

evidence from California to Texas is just as inconvenient as transporting evidence from Texas to

California.[4]  Accordingly, this factor is neutral and does not weigh in favor of transfer.

## 2. Availability of Compulsory Process

This factor is concerned with a court's ability to compel non-party witnesses to attend

trial. It will generally favor transfer when more non-party witnesses reside within the proposed

venue than in the current venue. *Volkswagen*, 545 F.3d at 316. At this stage of the litigation, the

Court's task is complicated because the identity and location of the non-party witnesses has not

fully crystalized. Movants argue that the Northern District of California has subpoena power

over many potentially inportant non-party witnesses in this case such as seven of the eight named

inventors. Dkt. No. 75 at 11. Movants add that the prosecuting attorneys and the designers of

the processors are also with the Northern District's subpoena power. *Id.* Movants also submit

that "the parties have identified more than 20 non-party inventors, authors or sources of prior art

located in the Northern District of California." *Id*. Movants contend that there are no significant

---

[4]        The Court does not take into consideration the presence of the court files from the related *Echostar*
case, which would have remained in California but for that litigation. *Cf. In re Hoffmann-La Roche Inc.*, 587 F.3d
1333,1337 (Fed. Cir. 2009) ("But, if not for this litigation, it appears that the documents would have remained a
source of proof in California.").

non-party witnesses in the Eastern District of Texas.  *Id*. at 12.

TiVo responds that "even without the benefit of discovery, TiVo already can list 10 non-party witnesses living in, or near, this District, that could be compelled to trial by this District." Dkt. No. 85 at 17.  TiVo adds that Movants fail to provide facts that suggest that any of the California witnesses identified would be unwilling or unable to travel to Texas for trial or deposition.  *Id.*

Movants reply that none of the potential witnesses identified by TiVo are likely to have any role in discovery or trial.  Dkt. No. 102 at 4.  Movants add that under TiVo's approach, several more non-party witnesses reside in the Northern District of California.  *Id.*

This factor weighs most strongly in favor of transfer when the proposed venue has absolute subpoena power over all of the non-party witnesses.  *Volkswagen*, 545 F.3d at 316-317. While the identity of these non-party witnesses remains somewhat speculative, it is clear that neither this Court nor the Northern District of California would have absolute subpoena power over all of the non-party witnesses.  Neither party disputes that this District would exercise subpoena power over some witnesses and lack such power for other witnesses or that the transferee venue is similarly limited in its subpoena power.

Movants' argument goes to potential role of witnesses during the litigation; however, this factor does not turn on whether a witness will be a "key witness" or provide significant testimony.  *Genentech*, 566 F.3d at 1343 ("Regarding the court's assessment that the petitioners failed to identify any 'key witnesses' within the venue, the petitioners were held to a higher standard than required by law."); *but see Nintendo*, 589 F.3d at 1199 ("All of the identified *key witnesses* in this case are in Washington, Japan, Ohio, and New York.") (emphasis added).

-10-

Invalidity will most likely be a relevant issue, and the specific prior art references may be relevant to demonstrating invalidity or lack thereof.  Further, the likelihood that a potential witness will testify does not have to meet some threshold.  Instead, it is enough that a party has not ruled out calling the witness at trial.  *In re Vtech Commc'ns., Inc.*, Misc. No. 909, 2010 WL 46332, at *2 (Fed. Cir. Jan. 6, 2010).

In this case, unlike *Genentech* and *Nintendo*, several non-party witnesses live in Texas.  Thus, both the transferor and transferee forums have usable subpoena power.  The determination, then, is which court's limited subpoena power is "more likely to compel testimony from non-party witnesses in their respective districts."  *Emanuel v. SPX Corp.*, No. 6:09-cv-220, 2009 WL 3063322, at *6 (E.D. Tex. Sept. 21, 2009).  Several more non-party witnesses reside within the absolute subpoena power of the Northern District of California than reside within this District or within 100 miles of this courthouse compared.  Therefore, the transferee venue has more usable subpoena power.  *Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer[.]").  Accordingly, this factor weighs in favor of transfer.

### 3. Cost of Attendance for Willing Witnesses

The convenience for and cost of attendance of witnesses is a very important factor.  *Genentech*, 566 F.3d at 1343; *Nintendo*, 589 F.3d at 1198.  This factor weighs in favor of transfer when the parties and witnesses are localized in or near the transferee district and none are located in the transferor district.  *Genentech*, 566 F.3d at 1343.  To analyze this factor, the Fifth Circuit employs the "100-mile" rule.  Under this rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of

inconvenience to witnesses increases in direct relationship to the additional distance to be

traveled." *Volkswagen*, 545 F.3d at 317. "Additional distance means additional travel time;

additional travel time increases the probability for meal and lodging expenses; and additional

travel time with overnight stays increases the time which these fact witnesses must be away from

their regular employment." *Id*. The "100-mile rule" favors transfer (with differing degrees) if

the transferee venue is a shorter average distance from witnesses than the transferor venue.

*Volkswagen,* 545 F.3d at 317. In light of recent case law, the focus of the inquiry appears to be

the U.S. witnesses, as foreign witnesses will be required to travel a significant distance no matter

where they testify. *Genentech*, 566 F.3d at 1344; *see also Novartis Vaccines and Diagnostics*,

*Inc. v. Wyeth*, No. 2:08-cv-067, 2010 WL 1374806, at *2 (E.D. Tex. Mar. 31, 2010) ("When

applying the 100-mile rule, a court should not place too much weight to the relative

inconvenience for overseas parties and witnesses."); *but see Nintendo*, 589 F.3d at 1199

(discussing that the Japanese witnesses would have to travel an additional 1,756 miles or 7 hours

by plane to Texas than to Washington state). In cases where the witnesses are distributed, the

theory that a forum could serve as a centralized location has been rejected. *See Genentech*, 566

F.3d at 1345; *see also Nintendo*, 589 F.3d at 1199 (citing *Genentech*).

In this case, Movants argue that the Northern District of California is dramatically less

inconvenient and costly for willing witnesses than this District. Dkt. No. 75 at 12-13. Movants

contend that they are unaware of "any material witnesses for any of the parties who are located in

the Eastern District of Texas." *Id.* at 13. In contrast, Movants submit, the developers of the

Mediaroom software and the processors used in the set-top boxes as well as certain named

inventors and prior art authors live in the Northern District of California. *Id*. "Given that the

Eastern District of Texas is more than 1,000 miles from those witnesses, transfer would greatly enhance their convenience and dramatically reduce their costs of participation," Movants argue. *Id*.

TiVo responds that many AT&T witnesses are located in Texas and that AT&T effectively seeks transfer out of its "home state." Dkt. No. 85 at 17. Specifically, TiVo cites 35 party witnesses involved in AT&T's U-verse business, which – according to TiVo – is based in and managed from Texas. *Id.* These witnesses include the senior management for U-verse, employees with knowledge about the U-verse product development and design, and U-verse technical personnel. *Id.* TiVo thus argues that it would inconvenient for these witnesses to travel to the Northern District of California. *Id.* at 18.

Again, review of this factor is complicated because of the litigation's early state. However, the parties' recitation of potential witnesses is at least in part undisputed. That is, most of the identified party witnesses in this litigation are found in Texas and California. For its part, TiVo cites several witnesses that live in Texas but none that live in the Eastern District of Texas. This case presents an altogether different factual scenario than those reviewed in *Genentech* and *Nintendo* where no witnesses lived in Texas or this District. *Genentech*, 566 F.3d at 1345 (finding this factor favors transfer where a substantial number of material witnesses reside within the transferee venue and the state of California and no witnesses reside within the Eastern District of Texas); *Nintendo*, 589 F.3d at 1199 (finding this factor favors transfer where "[n]o witnesses live in Texas"). Accordingly, it would be just as inconvenient for the Texas witnesses to travel to California as it would be for California witnesses to travel to Texas. On balance, therefore, this factor is neutral and does not weigh in favor of transfer.

**4. Other Practical Considerations**

This factor concerns problems that make trial of a case easy, expeditious and inexpensive. TiVo argues that this factor implicates notions of judicial economy, which is an important factor in the transfer calculus and best served when the case is heard by a court already familiar with the issues. Dkt. No. 85 at 11. TiVo submits that the cases mandating transfer out of this District did not involve "transfer from a Court with years of experience litigating complex patented technology." *Id.* at 12. TiVo contends that transfer of this case requires duplication of the Court's efforts in the *Echostar* matter and that similar considerations have convinced courts to transfer cases to courts already familiar with the patented technology. *Id* at 12-13 (citing cases).

Movants argue that neither the *Echostar* case nor the related, pending *TiVo v. Verizon* litigation justifies denying transfer. Dkt. No. 75 at 16. Movants add that the overlap between this case and those two related cases is small. *Id.* at 17. Movants point to the current reexamination proceedings in which the asserted claims of one of the patents-in-suit, the '389 patent, currently stand rejected before the Patent and Trademark Office. *Id.* Movants also submit that the accused products in the *Echostar* case were markedly different from the accused devices in the present case because AT&T's U-verse product is internet protocol TV ("IPTV") system versus the satellite-based system in *Echostar. Id.* "Because of these differences – and many others – between an IPTV system and a satellite of other broadcast system, the hardware and software used for an IPTV system is necessarily different than the hardware and software that would be used for the type of satellite system at issue in the *Echostar* case," Movants contend. *Id.*

TiVo rebuts the assertion that the reexamination proceedings reduce the weight to be

-14-

given to judicial economy.  Dkt. No. 85 at 13.  According to TiVo, "[a]lthough the PTO issued a 'final' office action, 'final' in this context is anything but 'final.'"  *Id*. at 13-14.  TiVo maintains that it will appeal and until the PTO issues a final certificate of unpatentability, the patents-in-suit remain enforceable and presumptively valid.  *Id*. at 14.  TiVo adds that the two additional patents in the present case do not minimize the potential waste of judicial resources.  *Id.*

Movants reply that judicial economy does not outweigh the significant convenience gained by transfer to the Northern District of California.  Dkt. No. 102 at 5.  Specifically, Movants argue that none of the terms construed by the Court in the Echostar litigation appear in any of the claims asserted from either the '465 patent or the '015 patent.  *Id*. at 5. Movants cite the Federal Circuit's recent decision in *In re Zimmer Holdings, Inc*., --- F.3d ---, 2010 WL 2553580, at *4 (Fed. Cir. June 24, 2010), for the proposition that "because the cases involve different products with only a single overlapping patent and no defendant is involved in both actions, it is likely that these cases will result in significantly different discovery, evidence, proceedings, and trial."  *Id*. at 6.  TiVo replies that judicial economy alone provides a dispositive reason for this Court to deny the motion to transfer.  Dkt. No. 109 at 6.  TiVo argues that *In re Zimmer Holdings* is inapplicable because the district court in *Zimmer Holdings* had no prior experience with the technology and patents at issue.  *Id.* TiVo adds that the Federal Circuit found that the plaintiff in *Zimmer Holdings* had no ties to the Eastern District and was "a classic case where the plaintiff is attempting to game the system by artificially seeking to establish venue by sharing office space with another of the trial counsel's clients."  *Id*. at 7.

Section 1404(a) requires that a court ruling on a motion to transfer also take into account "the interest of justice."  28 U.S.C. § 1404(a); *see also Volkswagen*, 545 F.3d at 315 ("When

viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'").  The Federal Circuit has found that, in patent cases, the "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result."  *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed.Cir.1997) (citations omitted).

Judicial economy becomes a significant factor when a court and the parties have invested substantial resources in a case.  *See, e.g.*, *Novartis Vaccines and Diagnostics*, *Inc. v. Wyeth*, No. 2:08-cv-067, 2010 WL 1374806, at *2 (E.D. Tex. Mar. 31, 2010) (finding that interests of justice weighed heavily against transfer when parties expended extensive resources before motion to transfer filed).  Judicial economy also counsels against "a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts lead[ing] to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."  *In re Volkswagen of America, Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).  Nevertheless, section 1404(a) requires "individualized, case-by-case consideration of convenience and fairness."  *Genentech*, 566 F.3d at 1346 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805 (1964)).

TiVo argues that the overriding public interest in judicial economy provides a sufficient and dispositive reason for this Court to deny transfer.  Specifically, TiVo argues that this Court has already construed one of the TiVo patents-in-suit and that another one of the TiVo patents-in-suit is a continuation of the previously construed patent.  The third TiVo patent-in-suit relates to

similar technology, according to TiVo.  On balance, TiVo overestimates the import of judicial economy in this case, that is, it is not dispositive.  For their parts, Movants *under*estimate the overlap between this case and the related *Echostar* and *Verizon* matters.  The present case and the *Verizon* matter involve three of the same patents and similar technology, namely, DVR set-top boxes.  Verizon brings counterclaims of infringement of its own patents, which neither AT&T nor Microsoft do here; however, the Court will still have to engage in claim construction of several of the same claim terms.  *See Red River Fiber Optic Corp. v. Verizon Services Corp*., et al., No. 2:08-cv-215, (E.D. Tex. Aug. 3, 2010) (order denying motion for reconsideration) (finding an overlap of issues for claim construction allowing the Court to take advantage of built-in efficiencies).

Movants argue that the Federal Circuit's opinion in *In re Zimmer Holdings, Inc*. supports its argument that the *Echostar* and *Verizon* matters do not warrant denying transfer. Dkt. No. 102 at 6.  In *Zimmer Holdings*, the Federal Circuit disagreed with the district court's conclusion that plaintiff's second suit against another defendant in the same forum favored denying transfer.  The Court found that "the overlap between [Plaintiff's] two actions, both of which are in the infancy stages of litigation, is negligible."   *In re Zimmer Holdings, Inc*., --- F.3d ---, 2010 WL 2553580, at *4 (Fed. Cir. June 24, 2010).  Movants submit that this case involves "completely different" technology and only a single patent from the *Echostar* litigation.  Dkt. No. 102 at 6.  Movants' argument is unavailing.  First, the Court finds unpersuasive the distinction between satellite television and IP television.  The focus of the present case, like the *Echostar* and *Verizon* matters, concerns digital video recorders not the type of signal used.  Second, the same three patents asserted by TiVo against Verizon are asserted against AT&T.  The '389 patent was at

issue in the *Echostar* litigation, and the '465 patent is continuation of the '389 patent.  The third patent is generally directed to similar technology and includes a similar specification and several of the same figures.  In short, the overlap between the *Echostar* and *Verizon* matters and the present case is not negligible.

While this Court's previous experience in the *Echostar* case and the currently pending *AT&T* case do not alone dispose of this motion, the Court's past experience is not negligible and the overlap of issues weighs against transfer.

## 5. Administrative Issues and the Courts' Congestion

TiVo submits that the median time to trial in the Northern District of California is 25.5 months while the median time to trial in this District is 20.8.  Dkt. No. 85 at 19.  TiVo argues that is not insignificant in this case "where time is of the essence" because AT&T will be able to "further entrench" itself based on an infringing product.  *Id.*

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor."  *Genentech*, 566 F.3d at 1347.  It appears that this Court could dispose of the present case slightly more quickly than if the case was transferred.  *Cf. In re Hoffmann-La Roche Inc.*, 587 F.3d 1333,1336 (Fed. Cir. 2009) (fact that transferee's less congested docket could resolve dispute more quickly favors transfer).  Accordingly, this factor slightly weighs against transfer.

## 6. The Local Interest in Having the Dispute Decided Locally

Under this factor, transfer may be appropriate where there is "no relevant factual connection" to the present venue.  *Volkswagen*, 545 F.3d at 318.  Further, a district court is to consider "those actually affected—directly and indirectly—by the controversies and events

giving rise to a case."

Movants argue that the interest of the Northern District of California in the present dispute is compelling because that district is TiVo's home forum, the location where the claimed inventions were purportedly conceived and reduced to practice, and the location where the Mediaroom software and U-verse-enabling processors were developed. Dkt. No. 75 at 14. Movants describe these connections as obvious and mandating transfer. *Id*. at 14-15. Movants add that U-verse set-top boxes are available throughout the Northern District of California but not in Marshall or Texarkana, Texas. *Id*. at 15.

TiVo responds that Movants' argument overlooks that the Eastern District of Texas has a strong local interest by virtue of the fact that AT&T's headquarters, U-verse business, and laboratory facilities are in Texas and the fact that AT&T performs testing, integration, and management of the accused service in Texas. Dkt. No. 85 at 18. TiVo adds, "Texas residents are especially affected by AT&T's U-verse business because it is based in Texas – not in California." *Id*.

Movants reply that TiVo's argument ignores that Mediaroom was developed and is currently maintained in the San Francisco area and runs on processors developed by a San Francisco area microchip company. Dkt. No. 102 at 3. According to Movants, "TiVo simply cannot negate the strong connections between the Northern District of California and the core technology at issue in this case." *Id.*

As has been the theme throughout the briefing on the motion to transfer, Movants and TiVo base their arguments on Mediaroom and U-verse, respectively. Similarly, the locality implicated differs based on the perspective taken. Regardless of the perspective, however, it is

the work of those involved in development and testing of the products that is called into question by claims of infringement. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333,1336 (Fed. Cir. 2009). It is undisputed that the software and processors were developed and tested in northern California. There is also no dispute that testing and development of the U-verse set-top boxes occurs in Texas. Thus, it cannot be said that the local interest is overwhelmingly greater in California than in Texas or vice versa. Accordingly, this factor is also neutral.

### 7. The Remaining Public Interest Factors

The remaining public interest factors, the courts' familiarity with the controlling law and the potential conflicts of law issues that may arise, are neutral and inapplicable, respectively.

In sum, after review of the private and public factors, Movant's have failed to show that the Northern District of California is a clearly more convenient forum to adjudicate this case. Accordingly, Movant's Motion to Transfer Venue should be **denied.**

### IV. CONCLUSION

For the foregoing reasons, Movants' Motion to Sever and Stay, Dkt. No. 71, and Motion to Transfer Venue, Dkt. No. 75, are hereby **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 17th day of September, 2010.**


DAVID FOLSOM
UNITED STATES DISTRICT JUDGE